Peter J. BUZYNSKI, Petitioner,

v.

Richard M. OLIVER, Warden, Maine State Prison, et al., Respondents.

No. 76–1091.

United States Court of Appeals,
First Circuit.

Argued May 4, 1976.

Decided July 14, 1976.

David C. Pomeroy, Portland, Maine, by appointment of the Court, for petitioner.

William J. Kelleher, Asst. Atty. Gen., Augusta, Maine, for respondent.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

COFFIN, Chief Judge.

This appeal presents the question whether the due process clause of the Fourteenth Amendment prohibits a state from requiring a criminal defendant, who pleads legal insanity, to carry the burden of persuasion on that issue. Maine is one of a substantial number of states which require a criminal defendant who raises the defense of legal insanity not only to produce evidence on that issue [1] but also to persuade the jury of his insanity by a preponderance of the evidence. In the instant case, defendant failed

1. Appellant does not attack Maine's presumption of legal sanity and the corollary that a criminal defendant must produce evidence of legal insanity before the jury may consider the question.

to satisfy this burden. In the first stage of his bifurcated trial, the jury found, beyond a reasonable doubt, that each of the essential elements of the crimes with which he was charged—robbery and arson—were present. At the second stage, the parties presented evidence on the issue of defendant's legal sanity, but the jury concluded that he had not established his insanity by a preponderance of the evidence.[2] The Maine Supreme Judicial Court affirmed this conviction. *State v. Buzynski*, 330 A.2d 422 (1974). On habeas corpus, the federal district court agreed. We granted a certificate of probable cause.

Our task is Janus-like, compelling us to look backward and forward, to be both analytical and predictive in an area of law which has seen recent significant movement by the Supreme Court. Two older cases, *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), and *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), deal with the insanity defense, in different contexts and with opposite results. In *Davis* the Court held that in federal courts the prosecution must prove sanity beyond a reasonable doubt. In *Leland* the Court held that a state could, consistent with due process, require a defendant to prove his insanity not merely by a preponderance of the evidence but beyond a reasonable doubt.[3] Two recent cases, although not dealing specifically with the insanity defense, have nevertheless developed an analytical approach which throws doubt on the continued viability of *Leland*. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which relied on *Davis*, held that, because of the criminal defendant's interest in his liberty and reputation and the societal interest in the reliability of jury verdicts in criminal cases, due process

requires that a state establish every element of a crime beyond a reasonable doubt. *Wilbur v. Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), extended the *Winship* rule to place on the prosecution the burden of overcoming the mitigating defense of heat of passion on sudden provocation beyond a reasonable doubt. Like sanity under Maine law, the absence of suddenly provoked passion is not defined as an element of the crime but is labelled an affirmative defense. We must therefore attempt to determine whether these more recent decisions foreclose any continued reliance on *Leland*.

In arguing that *Leland* has been overruled, appellant bears a heavy burden. Although there are circumstances in which it is appropriate for a court of appeals to disregard the teachings of earlier Supreme Court decisions, *cf. Women's Liberation Union v. Israel*, 512 F.2d 106, 109 (1st Cir. 1975), generally the Supreme Court has the exclusive authority to overrule its own decisions. We believe that we are obliged to follow *Leland* unless *Winship* and *Wilbur* have created "a near certainty that only the occasion is needed for [Supreme Court's] pronouncement of [*Leland's*] doom", *Salerno v. American League of Prof. Baseball Clubs*, 429 F.2d 1003, 1005 (2d Cir. 1970) (Friendly, J.). *See also In re Korman*, 449 F.2d 32, 39 (7th Cir. 1971); *United States v. Girouard*, 149 F.2d 760, 764–67 (1st Cir. 1945) (Woodbury, J., dissenting), *rev'd*, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946). It is in the light of this narrow scope of predictive analysis afforded the lower courts that we approach our task.

We therefore undertake a clinical scrutiny of *Wilbur* to determine its implications for the question before us.[4] In *Wilbur*, the

---

2. Although there is a relationship between legal sanity and mens rea, under Maine law it is clear that a legally insane individual can, in some cases, possess the requisite mens rea. Here, the bifurcated trial eliminated any possibility that the lesser burden of persuasion on the question of legal sanity could have influenced the jury determination that defendant possessed the required intent. *Compare Le-*

*land v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).

3. The Court saw "no practical difference" between the two burdens which would be significant in constitutional analysis. 343 U.S. at 798, 77 S.Ct. 1002.

4. We do not ignore the facts that the majority opinion in *Wilbur* cited *Leland* without disapproval, 421 U.S. at 696 n. 21, 95 S.Ct. at 1888,

issue was whether Maine could require a criminal defendant accused of felonious homicide to prove, by a preponderance of the evidence, that he acted in the heat of provoked passion and thereby qualified for the lesser punishment of manslaughter.

The court first looked to history and found that "the clear trend has been toward requiring the prosecution to bear the ultimate burden of proving this fact." 421 U.S. at 696, 95 S.Ct. at 1888. Here, while there is no such clear trend on the part of the states as that concerning the burden of proof in crimes committed in the passion of sudden provocation, the federal courts and about half the states today require the prosecution to prove mental responsibility beyond a reasonable doubt. *See* W. LaFave & A. Scott, Criminal Law, 313 (1972). The Court in *Wilbur* indicated no specific casual connection between its historical review and its analysis on the merits. But to the extent that contemporary consensus is relevant, there seems to be a more balanced diversity of approach to the insanity issue among the states than was present on the issue in *Wilbur*.

Addressing the merits, the Court in *Wilbur* rejected the argument that *Winship* applied only to facts which, if not proven, would wholly exonerate the defendant. It observed that the defendant's liberty and reputation interests are equally implicated by findings determining the degree of criminal liability, and concluded that *Winship* applies to facts which are determinative of the extent of criminal culpability. 421 U.S. at 696–99, 95 S.Ct. 1881.

■ This analysis obviously applies when the fact in issue is legal sanity rather than the existence of provocation. The fact of "legal sanity" is determinative not simply of the degree of criminal liability but of criminal culpability vel non. A criminal defendant who is found not guilty by reason of insanity is not criminally responsible. He is free of the stigma of being a criminal and will not be criminally confined. Although civil commitment is a substantial certainty, it is for the purpose of treatment and generally entails a far lesser or qualitatively different interference with the defendant's liberty. And the societal interest, here as in *Wilbur*, is in the reliability of jury verdicts, it being "critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned." 421 U.S. at 700, 95 S.Ct. at 1890, quoting *Winship*, 397 U.S. at 364, 90 S.Ct. 1068.

Appellant, therefore, has made a preliminary showing that the fact of sanity like the absence of provocation should be proved beyond a reasonable doubt. Therefore, we must proceed, as did the Court in *Wilbur*, to consider the operation and effect of the Maine burden of persuasion rule and the proper interests of the state and the defendant as they are affected by the allocation of the burden of proof. *See* 421 U.S. at 699, 95 S.Ct. 1881. The foregoing discussion indicates that the private and public interests favoring the requirement of proof of sanity beyond a reasonable doubt are as strong as, if not stronger than, those in either *Wilbur* or *Winship*. Defendant's interest in his liberty and his reputation are, at least, comparable, and the societal interest in the reliability of jury verdicts is identical. The difficult question is whether there might be a state interest sufficient to justify shifting the burden of persuasion to the criminal defendant.[5] *See* 421 U.S. at 701–02 & n. 31, 95 S.Ct. 1881.

and that two Justices, in concurring, stated that *Leland* survived both *Wilbur* and *Winship* since "[t]he existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime." 421 U.S. at 706, 95 S.Ct. at 1893. Although, as our subsequent discussion indicates, we cannot avoid the impression that the rationale of the majority does not rest on an "elements" analysis, we consider

the continued specific support of *Leland* by two Justices a significant factor in the calculus.

5. One reason Maine thinks it desirable that the criminal defendant be required to establish his insanity by a preponderance of the evidence is that a jury, which finds a defendant not guilty by reason of insanity, will have made an affirmative finding of insanity, and the jury verdict can form the basis for civil commitment.

In *Wilbur*, the Court felt obligated to consider the difficulties a state would face in proving an absence of provocation and whether they were sufficient to require giving serious consideration to excusing the prosecution from having to bear the "traditional burden" of proof beyond a reasonable doubt. The court noted that the overwhelming majority of states accepted that burden on the factual issue of provocation, *see id.* at 696 & 701, 95 S.Ct. 1881, that the fact in issue there "is largely an 'objective, rather than a subjective, behavioral criterion'. . . .", *id.* at 702, 95 S.Ct. at 1891, that Maine required the state to prove similar facts—e. g., intent and the absence of self defense—*id.*, and concluded that it "discern[ed] no unique hardship on the prosecution that would justify requiring the defendant [to prove] a fact so critical to criminal culpability." *Id.*

To the extent that this discussion in *Wilbur* suggests that whether the prosecution is under a "unique hardship" is critical and, at the same time, sets forth the criteria a court should apply in making such a determination, it possibly provides a basis for concluding that Maine's rule is valid. Since roughly half the states require the defendant to prove his insanity, *see* W. LaFave & A. Scott, *supra* at 313, the general practice in the country is far from conclusive on the extent of the prosecution's difficulty. And although it is difficult to conceive of the issue of insanity being addressed without reference to objective evidence of acts, words, and tests, the issue of sanity, unlike the absence of provocation, perhaps does involve largely a "subjective behavioral criterion". To the extent that this characterization of the fact in issue is critical, sanity

may be different from provocation. On the other hand, we note that the Court left little doubt but that the prosecution must prove mens rea, which often is equally "subjective", beyond a reasonable doubt; so it may be that no "unique hardship" would be involved. *See* 421 U.S. at 702, 95 S.Ct. 1881.

We doubt, however, that the *Wilbur* Court intended that the characterization of the uniqueness of the prosecution's hardship would be determinative. Since the "requirement of proof beyond a reasonable doubt in a criminal case [is] bottomed on a fundamental value determination . . . that it is far worse to convict an innocent man than to let a guilty man go free", *In re Winship, supra,* 397 U.S. at 372, 90 S.Ct. at 1077. (Harlan, J., concurring), we do not believe that the Court would uphold a rule placing the burden of proof on a criminal defendant simply because the prosecution would face unique difficulties in carrying the traditional burden. We think, rather, that the fact the government is under some sort of unique hardship would be, at most, a threshold issue. When such difficulty exists, there would be a sufficient governmental interest to warrant a careful analysis of the legitimacy of the state's attempt to place the burden of persuasion on the criminal defendant. *See* Ashford & Resinger, *Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview*, 79 Yale L.J. 165, 180 (1969). We would think the Court would also focus on the likelihood that most innocent—here, legally insane—defendants would be able to bear the burden of proving the fact in issue. *Id.* at 180–85.[6]

See *State v. Melvin*, 341 A.2d 376, 379 (Me. 1975). While this is a strong policy reason for continuing to adhere to the Maine rule if it is constitutionally permissible, we doubt that administrative convenience alone could be a sufficient justification for requiring a defendant to bear the burden of proving a fact critical to the degree of criminal culpability. It plainly would be feasible for a state to hold a civil commitment hearing after the jury had come back with a verdict of not guilty by reason of insanity. Those jurisdictions which require proof of sanity beyond a reasonable doubt apparently

have managed to arrange for the commitment of individuals found not guilty by reason of insanity.

**6.** We think it appropriate to rely on the analysis of this law review article since it not only was prophetic of *Winship* but also was cited by the *Wilbur* Court immediately after the Court stated that "exacting standards" would have to be satisfied before it would uphold a rule which placed the burden of persuasion on a criminal defendant as to any fact. *See* 421 U.S. at 701–02, 95 S.Ct. 1881 n. 31. We note that the

 If the Court pursues this kind of analysis, we suspect, in the absence of any empirical data, that it could conclude that the legitimacy of the state's shifting of the burden was supported by a sufficient correlation generally between those who commit crimes and their freedom from what the law would deem insanity. We have less confidence in an affirmative answer to a second more critical question: would an acceptably high percentage of innocent criminal defendants be able to persuade a jury of their insanity by a preponderance of the evidence? A defendant who is actually insane may well suffer from the outset in preparing his defense. If the crime is serious, juries may be understandably loath to accept the defense. We note, in passing, that we have held that the prosecution in a federal case may succeed in proving sanity beyond a reasonable doubt even when it introduces no expert testimony on the issue. *United States v. Dube*, 520 F.2d 250 (1st Cir. 1975). In short, we are not at all sure that the Court would hold that a sufficiently high percentage of innocent criminal defendants would be able to carry the ultimate burden of persuasion, even if only by a preponderance.

 To summarize, we see the issue of *Leland's* survival as in substantial doubt. *Wilbur's* rejection of the "elements"—"affirmative defense" dichotomy for burden determining purposes; the similarity of the legitimate societal and individual interests here and in *Winship* and *Wilbur; Wilbur's* minimizing of the prosecutorial burden; the problems posed by the analytical framework hinted at in *Wilbur*—particularly the likelihood of truly insane defendant's successfully carrying their burden—all argue for the overruling of *Leland*. But the Court has not announced a per se rule. Each affirmative defense must be separately analyzed. Not only is there widespread diversity in practice among the states, but the subjective nature of proof of sanity or insanity may be deemed to be constitution-

ally significant. Even if the Court applies the precise standards to which we have alluded, we cannot be sure that *Leland* will fall. *See notes* 4 & 6, *supra.* Other policy considerations, moreover, may be held relevant. In short, we cannot with assurance predict with "near certainty" the impending doom of *Leland*.

*Affirmed.*

---

authors disapproved of *Leland* only to the extent that it required proof by the defendant beyond a reasonable doubt; they apparently

did not object to a rule requiring a criminal defendant to bear the burden of persuasion on the question of his insanity.