STATE of Minnesota, Respondent,

v.

David Francis HOFFMAN, Appellant.

No. 81–591.

Supreme Court of Minnesota.

Dec. 30, 1982.

**710**

Thomas M. Kelly, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael McGlennen and Thomas A. Weist, Asst. County Attys., and Beverly J. Wolfe, Staff Atty., Minneapolis, for respondent.

TODD, Justice.

David Hoffman was convicted of first degree murder in the brutal slaying of his wife. During interrogation he had implicated his mother who was charged with conspiracy to commit first degree murder. We reversed her conviction in *State v. Ulvinen,* 313 N.W.2d 425 (Minn.1981). Hoffman contends his conviction should be reversed because of the improper admission of a confession, improper jury instructions regarding the defense of mental illness; failure to instruct on the lesser included offense of first degree manslaughter, improper jury conduct, and improper prosecutorial final argument. We affirm.

The facts relating to the murder and dismemberment of Carol Hoffman are set forth in *State v. Ulvinen,* 313 N.W.2d at 425, 426, 427 (Minn.1981). After her death Hoffman filed a missing person report with the Corcoran Police Department. Thereafter he was interviewed by the Hennepin County Sheriff's Office. A search was conducted of the area where Carol was thought to have disappeared and David Hoffman participated in the search.

During the time after Carol's death David began to believe that the end of the world was coming. He became very emotional and experienced a religious conversion. David again met with the Hennepin County Sheriff's deputies. He was advised of his constitutional rights at the outset of the interview. He asked each detective if he believed in the Lord and then told them what actually had happened on the night Carol died. He described in detail how he had killed Carol and disposed of her body. The detectives testified that David was calm throughout the interview although he occasionally became emotional. He made a written confession which he read, corrected and signed.

The officers prepared a search warrant for the house and boat. David agreed to take the detectives to Weaver Lake and point out the location where he had dropped the bags. The body of Carol Hoffman subsequently was recovered. David was charged by indictment with first degree murder. He pled not guilty and not guilty by reason of mental illness. Upon defendant's motion for change of venue the trial was moved to the Olmstead County Courthouse in Rochester. On February 11, 1981 the jury returned a verdict of guilty on the first degree murder charge. On February 18, 1981 the trial court sentenced David Hoffman to life imprisonment.

The issues presented are:

1. Was Hoffman's confession voluntary?

2. Was Hoffman's right to assert mental illness as a defense infringed upon by the trial court's instructions to the jury?

3. Should the lesser included offense of first degree manslaughter have been submitted to the jury?

4. Was there improper jury conduct?

5. Was there improper final prosecutorial argument?

1. A Rasmussen Hearing was held on January 27, 1981. At that time evidence was presented relating to the defense motion to suppress the written statement made by David Hoffman to the Hennepin County Sheriff's deputies on August 19, 1980. After hearing the testimony of the witnesses, the trial court found that Hoff-

man had been properly advised of his *Miranda* rights and had voluntarily waived them. The motion to suppress was denied. The defendant argues that his confession was not voluntarily made because he was not mentally competent at the time he spoke to the detectives and signed the written confession.

The evidence relating to the confession included the testimony of the three officers who were present when David Hoffman gave his statement detailing the killing of his wife Carol. Detective Huckaby testified that David was advised of his *Miranda* rights prior to making his confession. David asked each officer if he believed in the Lord and all three responded in the affirmative. He then proceeded to tell them how he had strangled his wife, dismembered her body, and disposed of the body in Weaver Lake.

David was calm up to the point where he asked the officers about their belief in the Lord. He then began to get more emotional and was described as being on the verge of tears. He broke down four or five times during his oral statement when he referred to his children and his mother. He was responsive during questioning and appeared to understand what was said to him. According to Detective Huckaby, David was in a state of "relieved calm" after making the oral confession.

Detective Sonenstahl, the officer who took David's written statement, testified that during that interview David was willing to answer questions and did not have difficulty understanding what was said to him. At the end of his written statement David was asked if there was anything he wished to add. He then mentioned the eruption of Mount St. Helen's, relating it to the fact that his mother's name was Helen and saying that he felt the end of the world was near. David was then told to read each page of the statement and make corrections, which he did.

Two psychiatrists testified regarding the defendant's mental state. Both doctors interviewed David Hoffman in the Hennepin County Detention Center a day or two after his confession. At that time Dr. Darel Hulsing diagnosed David as psychotically depressed. He stated that David was suffering from delusional thinking that may have been present for some time. However, on cross-examination Dr. Hulsing testified that psychotic depression would not prevent David from knowing his surroundings and the circumstances in which he found himself or participating intelligently in a conversation with the police officers.

Dr. Stephans testified that based on his interviews with David Hoffman, he diagnosed David as suffering from acute psychosis. In response to a hypothetical question, Dr. Stephans stated that in his opinion David was not competent to understand the charges against him and did not have the capacity to understand his rights on the day he made his confession.

Additional evidence concerning the defendant's mental state at the time of his confession came from two attorneys who visited him in jail on August 21. John McVay testified that when he asked David if he wanted to talk to them about his situation, David replied that he though that the police officers and the Lord would be his lawyers but if they wished to be his attorneys that would be okay too. McVay related portions of his conversation with David wherein David made inappropriate comments. He characterized David's mental state by stating that he did not feel that he was getting through to David. Mr. McVay's partner, Thomas O'Connor, testified that in his opinion David Hoffman wasn't aware of the seriousness of the situation or what was happening to him.

The defendant himself testified at the Rasmussen Hearing. He stated that he could not remember giving an oral statement to the detectives and could only remember parts of the written interview. He also described his thoughts on August 19 concerning the end of the world and the appearance of God. He said that he wanted to tell the detectives what he'd done so Carol's body could be recovered and her soul could go to heaven. On cross-examination David testified that he told the detectives

what had happened, that he was not coerced, that he understood the detective's questions and that he knew that he was confessing to having killed a human being.

■ The state has the burden of establishing the voluntary nature of the confession by a fair preponderance of the evidence. *State v. Wajda,* 296 Minn. 29, 206 N.W.2d 1 (1973). The finding of the trial court as to admissibility of the confession will not be reversed unless it is clearly erroneous, but this court can make an independent determination of the voluntariness of the confession based on the record. *State v. Hardimon,* 310 N.W.2d 564, 567 (Minn.1981).

Hoffman does not contend that improper police conduct was used in obtaining his confession or that his conviction is not based on reliable evidence. Rather, he contends that the constitutional due process issue arises in this case because of our concern that a defendant's confession be the product of his free and rational choice. There is conflicting evidence on the question of whether the defendant was capable of making a voluntary confession. The question is a close one because, while Hoffman was capable of understanding the officer's questions and responding to them, he may not have been competent to understand the seriousness of his situation and to make a rational decision to waive his right to counsel and his right to remain silent.

There is no indication that David Hoffman was pressured into making a statement by the police or that the circumstances surrounding the interview compelled him to speak. In fact, the evidence shows that he was extremely cooperative and willing to tell the police how he had killed his wife and disposed of the body. He appeared to be coherent and able to understand where he was and what the police were saying to him. However Dr. Stephans testified that because David was suffering from acute psychosis he was not competent to understand the charges against him or his constitutional rights. In addition, Hoffman's conversation with the attorneys indicates a certain inability to grasp the reality of the situation he was in.

■ Despite the existence of some testimony to the contrary, we find, after independently evaluating the record, that the prosecution established the voluntariness of Hoffman's confession by a fair preponderance of the evidence. The trial court's refusal to suppress the confession was not clearly erroneous.

2. Hoffman claims error in the trial court's instructions to the jury regarding evaluation of evidence relative to mental capacity. The court gave the following instruction over defense objection:

[Y]ou are to consider the testimony of the various witnesses as to the defendant's mental state at the time of the death of Carol Hoffman solely on the question of whether the defendant knew the nature of his act and whether he knew his act was wrong.

You are not to consider this testimony on the issues of the premeditation and intent of the defendant to affect the death of Carol Hoffman. That is a separate and independent defense.

■ The challenge to this instruction necessarily requires this court to consider the nature and scope of the mental illness defense. We have never directly considered either issue. With reference to the nature of the defense, we must first consider whether the right asserted by the defendant is a constitutional right or whether it is a right conferred by statute. Other states which have considered this issue have determined that the right involved is a constitutional right. We agree.

In *State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910), the Supreme Court of Washington declared a state statute unconstitutional which provided that insanity was not a defense to a crime. The court found the insanity defense to be a part of the common law which existed before its state's constitution and was "unimpaired by judicial decision or legislative enactment." *Id.* at 108, 110 P. at 1022. The statute deprived the defendant of liberty without due process of law primarily because it deprived him of the right to trial by jury. It stated:

Whatever the power may be in the Legislature to eliminate the element of intent from criminal liability, we are of the opinion that such power cannot be exercised to the extent of preventing one accused of crime from invoking the defense of his insanity at the time of committing the Act charged, and offering evidence thereof before the jury. One so accused had this right at the time of the adoption of our Constitution, and we are of the opinion that the question, is so inherently related to the guilt or innocence of all accused persons, that it cannot be now taken away from them without violating these guarantees of the Constitution.

*Id.*

In Mississippi, a statute stated that insanity was not a defense to a crime, but could be considered as a mitigating factor in sentencing. *Sinclair v. State,* 161 Miss. 142, 132 So. 581 (1931), held that such a statute violated the due process clause of the state and federal constitutions, and the prohibition against cruel and unusual punishment. Similarly, Colorado has recognized that any statute which provides that insanity is no defense to a criminal charge is unconstitutional. *Ingles v. People,* 92 Colo. 518, 22 P.2d 1109 (1933).

Most recently, Louisiana declared that juveniles have a constitutional right to present evidence of insanity in a juvenile prosecution, even though it is a civil proceeding. *In re Causey,* 363 So.2d 472 (La. 1978). The court stated that "the denial of the right to plead insanity, with no alternative means of exculpation or special treatment for an insane person unable to understand the nature of his act, violates the concept of fundamental fairness implicit in the due process guaranties." *Id.* at 474.

The United States Supreme Court has not addressed the question. However, recent federal cases have spoken of the insanity plea in terms indicating that the right to assert it has constitutional dimensions of a due process nature. *See e.g. Busynski v. Oliver,* 538 F.2d 6 (1st Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 503, 50 L.Ed.2d 596

(1976); *Hill v. Lockhart,* 516 F.2d 910 (8th Cir.1975); *Ramer v. United States,* 390 F.2d 564 (9th Cir.1968). *See also Wharton's Criminal Law and Procedure,* § 38 at 82–83 (1957 & Supp.1979) (regarded as an essential constitutional right).

Minnesota has recognized this concept in dictum. In *State v. Rawland,* 294 Minn. 17, 199 N.W.2d 774 (1972), the court stated:

It has been said that a statute providing that insanity shall be no defense would be unconstitutional as a violation of due process of law and the right to trial by jury.

*Id.* at 38, 199 N.W.2d at 786. In *State v. Billings,* 55 Minn. 467, 57 N.W. 794 (1894), the court examined the constitutionality of Minnesota's civil commitment statute. In dictum it stated that there are certain fundamental rights that the Legislature cannot take away. It stated:

* * * in judicial proceedings, "due process of law" requires notice, hearing, and judgment. These words * * * do not mean anything which the legislature may see fit to declare to be "due process of law," for there are certain fundamental rights which our system of jurisprudence has always recognized, which not even the legislature can disregard, in proceedings by which a person is deprived of life, liberty, or property, and one of these is "notice before judgment in all judicial proceedings." * * * it may be stated generally that due process of law requires that a party shall be properly brought into court, and that he shall have an opportunity, when there, to *prove any fact* which, according to the constitution and the usages of the common law, *would be a protection to him* or to his property.

*Id.* at 474, 57 N.W. at 795. (emphasis supplied).

We now hold that a defendant has a due process constitutional right to assert the defense of mental illness under both the state and federal constitutions. U.S.Const. Amend., XIV, § 1; Minn.Const. art. I, § 7.

In *State v. Bouwman,* 328 N.W.2d 703 (Minn.1982), released today, together

with this opinion, we have held that the defendant has no right to present psychiatric evidence as to diminished responsibility. The defendant's right to present evidence as to mental capacity occurs as part of his case. The issue of the defendant's mental capacity is not involved in the state's evidence where it must establish that the defendant committed the act charged and further establish the intent or premeditation of the defendant if either are an element of the particular crime.

■ 3. Thus the trial court correctly advised the jury that it should consider the evidence relating to the defendant's state of mind in the scope of the mental illness defense as defined in Minn.Stat. § 611.026 (1980) which states as follows:

No person shall be tried, sentenced, or punished for any crime while mentally ill or deficient so as to be incapable of understanding the proceedings or making a defense, but he shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason, from one of these causes, as not to know the nature of his act, or that it was wrong.

■ This statute is a codification of the common law rule first adopted in 1843. *M'Naghten's Case,* 10 Clark & Finnelly 200, 8 Eng.Rep. 718 (H.L. 1843). An extensive review of its legal background appears in *State v. Rawland,* 294 Minn. 17, 29–36, 199 N.W.2d 774, 781–84 (1972). As indicated there, various courts and institutions have sought other means of coping with the problem of the insanity defense. Minnesota has consistently resisted all efforts to effectuate any basic change. As reflected in the *Rawland* decision, the legislative changes that have occurred led to evaluation of the whole person in determining the propriety of the insanity defense in a particular case. Admittedly, retention of the *M'Naghten* rule is a minority position.

Since the presentation of evidence of mental illness is a right of constitutional dimension, this court can define the scope of the defense. At this time, however, we need not consider this question since we are satisfied that the *M'Naughten* rule provides a fair and just means of evaluating the actions of a defendant who claims the defense of mental illness.

■ We do observe that the language of the instruction is misleading in that it refers to intent and premeditation as defenses rather than elements of crime charged which the state must prove. When the jury instructions are considered as a whole, that language, though confused, was not prejudicial to the defendant.

4. The problem which the trial court dealt with in this case will not arise if the defendant elects to bifurcate the trial as provided for in our Rules of Criminal Procedure. Minn.R.Crim.P. 20.02, subd. 6(2). There the first part of the trial will be directed solely to whether or not the state has sustained its burden of proof as to the guilt of the defendant. The second part of the trial will be directed solely to a determination of whether the defendant has sustained the burden of establishing the defense of mental illness.

■ In order to avoid confusion in the conduct of a trial where the defendant has entered a plea of not guilty by reason of mental illness, but has not elected to bifurcate the trial, we now direct that the following proceedings will occur. The state will proceed with its case and rest. The defense will proceed to introduce any evidence, except psychiatric evidence relating to the capacity of the defendant, relative to the credibility of the evidence introduced by the state from which it seeks to establish that the defendant committed the act and further seeks to infer that the defendant had the required intent or premeditation required under the specific crime or crimes for which the defendant is charged. The defense shall rest provisionally as to this part of the evidence and the state may rebut evidence introduced by the defense. When both sides have rested on these issues

the defendant shall proceed to introduce evidence as to his or her defense of mental illness.[1]

The proceedings in the second stage of a criminal trial, whether bifurcated or separated as herein provided, shifts to the defendant the burden of establishing by a fair preponderance of the evidence that he or she lacked the capacity to form the requisite intent to commit the crime charged. Minn.Stat. § 611.025 (1980). Expert evidence is appropriate to assist the jury in making its determination. The accused's mental capacity to formulate the requisite intent presents an opportunity for the presentation of relevant medical testimony, but the ultimate issue involves his criminal responsibility. It is solely the function of the jury to determine the ultimate question as to whether or not the appropriate capacity exists. Thus a strong argument can be made that the expert witness should not be allowed to render an opinion as to the capacity of the defendant to have the requisite intent or premeditation. As a practical matter, however, we will permit qualified experts to answer this ultimate question so long as an appropriate instruction is given to the jury emphasizing that it is their function to make this determination and any opinions on these questions are not binding upon them. We adopt the view of the court in *Bethea v. United States,* 365 A.2d 64, 86 n. 46 (D.C.1976), where it is stated:

The unspoken assumption underlying the rationale in *Brawner (United States v. Brawner,* 153 U.S.App.D.C. 1, 471 F.2d 969 (1972) (en banc)) is that the separate medical and legal models of the human mind are sufficiently congruent to warrant the conclusion that expert testimony based upon the former necessarily would be relevant to the legal question of whether the accused's mental condition satisfied the concept of mens rea. We do not quarrel with the notion that psychiatric testimony is of general relevance to the issue of responsibility; that is, that

the ability of the accused to function normally (as defined by the medical model) will bear upon the applicability of the inferential analysis by which mens rea ordinarily is determined. Care must be exercised, however, to distinguish such general relevancy from the unwarranted additional assumption that the psychiatric sciences are capable of direct proof of the existence of the necessary mental state as defined by law.

When the defense has rested, the state has a right to present rebuttal expert evidence as to the capacity of the defendant to form the requisite intent or premeditation. Its experts may also answer the ultimate question subject to the same cautionary jury instruction.

5. In a unitary trial, the court shall instruct the jury that evidence as to mental capacity of the defendant is to be considered only in the second stage of the trial and is not to be considered when evaluating evidence presented in the first stage of the trial as to the fact of intent as it may be inferred from the evidence.

The jury should further be instructed that they should first determine if the state has proved all of the elements of the offense charged beyond a reasonable doubt before proceeding to consider the evidence relating to the defense of mental illness. *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).

6. Hoffman contends that the trial court erred in denying his requested instruction on the lesser included offense of first degree manslaughter. He alleges that under the standard established in *State v. Leinweber,* 303 Minn. 414, 228 N.W.2d 120 (1975), the evidence would reasonably support a not guilty verdict on the first and second degree murder charges and a conviction on the first degree manslaughter charge.

The portion of the first degree manslaughter statute applicable to this case states that one is guilty of that charge if

---

1. The availability of witnesses may require that some appear out of order. The trial court can manage this problem by properly advising the jury as to which stage of the proceedings it is appropriate for them to consider the evidence offered.

one "intentionally causes the death of another person in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances." Minn. Stat. § 609.20, subd. 1 (1980). In *State v. Leinweber,* this court discussed at length the standard for submitting that charge in a murder case. In that case the defendant was charged with second degree murder for the shooting death of his wife and was convicted of the lesser offense of third degree murder. The defendant claimed that he shot his wife by accident while cleaning his gun. On appeal this court found that because there was evidence of emotional strain and habitual arguing between the defendant and his wife, it was error for the trial court to refuse to give the requested instruction on first degree manslaughter. *See also State v. McDonald,* 312 Minn. 320, 251 N.W.2d 705 (1977) (test is whether there is rational basis for verdict acquitting defendant of greater offense and convicting of lesser offense).

The issue here is a close one, in light of the standard set forth in *Leinweber.* As in *Leinweber,* there was evidence of marital discord between David and Carol Hoffman, particularly surrounding the issue of David's mother living with the Hoffmans. David testified that when Carol rejected his sexual advances and told him, "Why don't you go downstairs and fuck your fat mama," he lost control and began to choke her. Also, similar to the facts in *Leinweber,* there was evidence here of premeditation, including statements made by Hoffman to co-workers and to his mother prior to Carol's death that he planned to kill his wife. That evidence would not necessarily be inconsistent with murder in the heat of passion, however, because a jury could find that while David fantasized about killing Carol he was actually provoked to do so by her words on August 10th.

■ The manslaughter statute requires that the provocation be such "as would provoke a person of ordinary self-control under like circumstances." The words and acts of Carol Hoffman, while insulting, do not rise to the level of provocation for murder for a person of ordinary self-control, even given the increasing tension in the Hoffman marriage. In addition, the fact that the jury was instructed on both first and second degree murder and found the defendant guilty of first degree murder indicates that they believe that the killing was premeditated and therefore not committed in the heat of passion. The failure to give the manslaughter instruction did not prejudice the defendant. *See State v. Wahlberg,* 296 N.W.2d 408, 417–18 (Minn. 1980).

7. The claim of improper jury contact is not sustained by the record. During the course of the trial the court brought to the attention of counsel the fact that one of the jurors, a barber, had been contacted by one of his customers and that in the course of his conversations with her the customer asked the juror if he had seen any pictures during the trial. The juror told the woman that he couldn't talk about the trial and hung up on her. The judge told the attorneys that he would examine the juror and if it appeared that the incident would be a problem, he would call the attorneys in.

■ The juror was interviewed by the trial court outside the presence of the attorneys. Defense counsel made a motion to have the jurors examined in the presence of counsel and to have the juror who was contacted stricken. The trial judge denied the motion because he viewed the conversation as "extremely inconsequential" and because he felt that it would not influence the juror's decision. We agree.

■ 8. Finally, Hoffman contends that portions of the prosecutor's final argument, in which the prosecutor implied that his mental illness defense was contrived, prejudiced his right of a fair trial. The standard for granting a new trial based upon prosecutorial misconduct is that it is justified "only where the misconduct, viewed in the light of the whole record, appears to be inexcusable and so serious and prejudicial that defendant's right to a fair trial was denied." *State v. Wahlberg,* 296 N.W.2d 408, 420 (Minn.1980). The remarks made

and implications raised by the prosecutor here do not rise to the level requiring a new trial.

Affirmed.

SCOTT, Justice (concurring specially).

Rather than create new untested procedure that will cast us onto uncharted waters and surely compound the very confusion that we are striving to eliminate, I would require mandatory bifurcation when a plea of not guilty by reason of mental illness or mental deficiency is entered. This tested procedure is already outlined in Rule 20, Minn.R.Crim.P.

PETERSON, Justice.

I agree with the view of Justice Scott.

KELLEY, Justice.

I join in the concurring opinion of Justice Scott.

WAHL, Justice (concurring specially).

I do not disagree with the result in this case. However, for reasons set out in my dissent in *State v. Bouwman*, 328 N.W.2d 703 (Minn.1982), released today, I strongly disagree with the holding of the majority that the trial court committed no error by instructing the jury that the testimony of defense witnesses as to the defendant's mental state at the time of the death of Carol Hoffman could not be considered on the issues of premeditation and intent but only on the question of whether the defendant knew the nature of his act and whether he knew the act was wrong.

While the instruction was not prejudicial to defendant, there being ample evidence otherwise of premeditation and intent, it is, to my mind, an incorrect statement of the law. To hold that a defendant charged with murder in the first degree may not offer relevant and competent expert psychiatric opinion testimony on the issues of premeditation and specific intent is to violate the defendant's constitutional right to present evidence. *Washington v. Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–23,

18 L.Ed.2d 1019 (1967); *Hughes v. Mathews*, 576 F.2d 1250, 1255–56 (7th Cir.1978), *cert. dismissed sub nom. Israel, Warden v. Hughes*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978).

I also strongly disapprove of the majority's wholesale amendment of the Rules of Criminal Procedure with regard to the trial of criminal cases where the defendant has entered a plea of not guilty by reason of mental illness but has not elected to bifurcate the trial as provided by Minn.R.Crim.P. 20. The new untested procedure will not only compound the confusion, as Justice Scott notes in his special concurrence, it will confound the criminal law bar, whose members have a right to expect that an amendment of such magnitude would go through the Criminal Rules Committee charged with monitoring those rules and be the subject of hearing and debate before this court before adoption.