STATE of Minnesota, Respondent,

v.

**Myles A. KOOP, Appellant.**

**No. C1–84–2204.**

Court of Appeals of Minnesota.

Oct. 15, 1985.

Review Granted Dec. 19, 1985.

---

Hubert H. Humphrey, III, Minn. Atty. Gen., Janet A. Newberg, Sp. Asst. Atty. Gen., St. Paul, Minn., David Olin, Pennington County Atty., Thief River Falls, Minn., for respondent.

C. Paul Jones, Minn. Public Defender, Mary C. Cade, Asst. Public Defender, Minneapolis, Minn., for appellant.

Considered and decided by POPOVICH, C.J., WOZNIAK and HUSPENI, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Myles Koop appeals from convictions of attempted second degree murder and second and third degree assault following a

bifurcated jury trial, claiming (1) the trial court erred when it refused to give a requested jury instruction on attempted first degree manslaughter, and (2) he sustained his burden of proof to show he was so mentally ill to be excused from criminal liability for the beating of his ex-wife and her companions. We affirm on the insanity issue and reverse and remand for a new trial on the issue of degree of guilt.

## FACTS

Appellant was charged with attempted first degree murder, first degree assault, and two counts of second degree assault in December 1983. In January 1984 he pleaded not guilty and not guilty by reason of mental illness on all counts. In September 1984, after the first phase of a bifurcated jury trial, he was convicted of attempted second degree murder, two counts of second degree assault, and one count of third degree assault.

After the trial's second phase, the jury found appellant failed to prove by a preponderance of the evidence that he was not guilty by reason of mental illness. Koop was sentenced to 81 months in prison on the attempted murder and second degree assault convictions. No sentence was imposed on the third degree assault conviction.

It is not disputed appellant beat his ex-wife and her companions with a tire iron. On December 28, 1983, appellant's former wife, Aloma Koop, was about to leave Northwestern Hospital in Thief River Falls, Minnesota where she worked as a nurse. She was accompanied by her friend and co-worker Connie Grandstrand. As they left the hospital, Aloma noticed appellant's pickup truck. Aloma testified she was afraid because of a confrontation with appellant earlier in the day. Appellant drove off, however, and the women left with Aloma's step-uncle, John Hesse, in Aloma's car.

Appellant then drove into the hospital's one way driveway the wrong way and pulled alongside Aloma's car. According to witnesses, appellant backed up his truck, ramming the front end of Aloma's car. He then jumped out of his truck, grabbed a tire iron, began to smash the car, the windshield, and side windows, and hit Aloma. Grandstrand and Hesse tried to protect Aloma, but Koop turned on them with the tire iron.

Meanwhile, Aloma opened her door and ran toward the hospital. Koop caught her and continued beating her with the tire iron. Hesse was finally able to subdue Koop and a bystander took the tire iron.

Aloma Koop, Grandstrand, and Hesse were taken to the hospital and treated for their injuries. Aloma was later transferred to a hospital in Grand Forks, North Dakota for facial surgery. Appellant was taken to the Law Enforcement Center in Thief River Falls and booked.

Myles and Aloma Koop were married in 1967 and divorced in 1982. They have two sons. Following the divorce, they continued to disagree over several matters, including custody, support payments, and property division. On December 28, the day of the attack, a conciliation court hearing was held to determine possession of a table and chairs Koop claimed were his. The judge dismissed the matter for lack of jurisdiction. This made Koop furious and was the event that triggered the attack on Aloma.

After the jury convicted appellant of attempted second degree murder, two counts of second degree assault, and one count of third degree assault, the second trial stage was to determine whether appellant sustained the burden of proving mental illness. The defense called a number of witnesses, including appellant's family members, friends, and psychiatrist Dr. Carl Schwartz. His family and friends testified appellant underwent a substantial personality change after his wife left him in July 1981. Dr. Schwartz testified that appellant suffered from a mental disorder called "paranoid perfectionist personality" and he was psychotic. In Dr. Schwartz's opinion, appellant probably knew what he was doing on December 28, 1983. However, he said ap-

pellant was so paranoidally mentally ill and emotionally unstable at the time of the attack that he could no longer distinguish right from wrong and was thus mentally ill according to the *M'Naghten* test.

Dr. Dennis Philander, a psychiatrist with the Minneapolis Clinic of Psychiatry and Neurology, testified for the State. He disagreed with Schwartz's diagnosis and said appellant was not delusional and was not in a paranoid state, though he may suffer from some degree of paranoia. Dr. Philander opined that on December 28, 1983 appellant was *M'Naghten* sane and he knew the nature of his act and that it was wrong.

## ISSUES

1. Does the evidence support the jury's verdict that appellant was not so mentally ill so as to be excused from criminal liability?

2. Did the trial court err in refusing to instruct the jury as to the lesser offense of attempted manslaughter in the first degree?

## ANALYSIS

■ 1. Minn.Stat. § 611.026 (1984) sets the standard for excuse from criminal responsibility by reason of mental illness:

No person shall be tried, sentenced, or punished for any crime while mentally ill or mentally deficient so as to be incapable of understanding the proceedings or making a defense; but he shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason, from one of these causes, as not to know the nature of his act, or that it was wrong.

This statutory language codifies the *M'Naghten* rule which was established by the English House of Lords in 1843. *State v. Bouwman*, 328 N.W.2d 703, 705 (Minn. 1982); *see Daniel M'Naghten's case*, 10 Clark & Finnelly 200, 8 Eng.Rep. 718. Courts have held that the burden is on the defense to prove by a preponderance of the

evidence that the accused satisfies the requirements of Minn.Stat. § 611.026. *State v. LaTourelle*, 343 N.W.2d 277, 282 (Minn. 1984).

Appellant now urges the court to apply a more lenient standard than *M'Naghten* to release him from criminal liability based on mental illness. For years, Minnesota appellate courts have criticized the *M'Naghten* standard:

While we agree that the M'Naghten rule should have been discarded with the horse and buggy, it is part of our statutory law and as such, as long as we adhere to the rule that the legislature can prescribe rules of evidence, we must adhere to the statute.

*State v. Dhaemers*, 276 Minn. 332, 339, 150 N.W.2d 61, 66 (1967) (footnote omitted).

Nonetheless, *M'Naghten* is still the current rule in Minnesota; the test to excuse a person from criminal liability being whether the person was so ill that he or she could not distinguish right from wrong. Minn. Stat. § 611.026; *see LaTourelle*, 343 N.W.2d at 282.

Appellant's psychiatrist opined Koop was *M'Naghten* mentally ill—that he couldn't distinguish right from wrong. On the other hand, the State's psychiatrist opined appellant was able to distinguish right from wrong.

■ While expert testimony is appropriate to assist the jury in making its determination of appellant's mental state, such testimony is not binding upon them. *State v. Hoffman*, 328 N.W.2d 709, 717 (Minn. 1982). The ultimate issue of criminal responsibility is *solely* the function of the jury. Experts may opine about a defendant's capacity or intent, but only a jury can decide whether the requisite capacity exists. *See id.*

■ *LaTourelle* sets out the standard for review. There the court stated, " 'Substantial deference is accorded the jury's evaluation of the testimony on mental illness, and we have often said that the jury is the sole judge of the believability and weight of the testimony.' " 343 N.W.2d at

282 (quoting *State v. Linder,* 304 N.W.2d 902, 907 (Minn.1981)). The court stated it would not interfere with the jury's conclusions, "if there [was] sufficient other evidence to contradict the expert's opinion." *Id.*

■ There was evidence appellant knew his actions were wrong but did not care. Earlier in the day, Koop told a police investigator he (Koop) should have shot his wife. The police officer warned Koop that was wrong. "I don't think I give a shit," Koop replied. Even if the jury believed defense testimony that appellant acted in a rage, had mental problems and was a disturbed man, they also could have presumably believed Koop knew his actions were wrong.

Considering the jury's ability to observe appellant, the witnesses and psychiatrists, there was sufficient evidence to support the verdict.

■ 2. Appellant next argues he was entitled to a jury instruction on attempted first degree manslaughter and contends the court's denial is reversible error.

Koop was charged with attempted first degree murder. The jury was instructed on attempted first degree murder and attempted second degree murder. Defense counsel specifically requested, and the trial court refused, a jury instruction on attempted first degree manslaughter. Appellant was convicted of attempted second degree murder under Minn.Stat. § 609.19 (1984). Second degree murder is defined as follows:

Whoever does either of the following is guilty of murder in the second degree and may be sentenced to imprisonment for not more than 40 years: (1) Causes the death of a human being with intent to effect the death of that person or another, but without premeditation * *.

*Id.* subd. 1.

Minn.Stat. § 609.20 defines first degree manslaughter as follows:

Whoever does any of the following is guilty of manslaughter in the first degree and may be sentenced to imprison-

ment for not more than 15 years or to payment of a fine of not more than $30,-000, or both: (1) Intentionally causes the death of another person in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances * * *.

*Id.* subd. 1.

Minn.Stat. § 609.04, subd. 1 provides, "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense * * *." Furthermore, Minn.Stat. § 611.02 provides where there exists doubt which of two or more degrees of a crime a defendant has committed, the jury is obligated to convict of only the lowest degree.

In determining what, if any, lesser degrees should be submitted, the test should be whether the evidence would reasonably support a conviction of the lesser degree and at the same time is such that a finding of not guilty of the greater offense would be justified.

*State v. Leinweber,* 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975). In *Leinweber,* the defendant was convicted of third degree murder for shooting his wife. The defendant claimed it was accidental. The supreme court found that because there was evidence of emotional strain and habitual arguing between the defendant and his wife, it was error for the trial court to refuse to give the requested lesser instruction.

The State relies on *State v. Hoffman,* 328 N.W.2d 709 (Minn.1982) to support that the instruction need not be given. In *Hoffman,* the court upheld the trial court's refusal to submit the instruction on first degree manslaughter. However, there is a critical distinguishing characteristic between *Hoffman* and the case here. In *Hoffman,* the jury, instructed on both first degree murder and second degree murder, found the defendant guilty of first degree murder. This indicates the jury believed the killing was premeditated. Thus, failure to give the manslaughter instruction did not unduly prejudice defendant. *Id.* at 718.

Here, the jurors were instructed on first degree murder and second degree murder and they chose the lesser of the two offenses. They did not find the attack to be premeditated. Therefore, they might have chosen to convict for attempted first degree manslaughter if the instruction had been given.

This court has held, in a homicide prosecution in which the principal issue was defendant's state of mind, that the court committed reversible error in preventing defendant from testifying about his marital sex life when such testimony was relevant to defendant's state of mind when he killed his wife's lover. *State v. Johnsen*, 364 N.W.2d 494, 497 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. May 20, 1985). In *Johnsen*, the defendant admitted killing the victim but claimed it was done in the heat of passion. The trial court refused to admit testimony relevant to defendant's emotional state but did give the jury instruction on manslaughter.

Here we have the opposite situation. The record is filled with testimony relevant to Koop's emotional state prior to attacking his ex-wife. The judge refused to give a jury instruction on attempted first degree manslaughter. Where there is evidence to support a conviction for a lesser included offense, and the jury instruction is requested, it must be given.

 The supreme court recently held it was not reversible error for the trial court to refuse a jury instruction on theft by swindle as a lesser included offense of aggravated robbery. *State v. Coleman*, 373 N.W.2d 777 (Minn.1985). In *Coleman*, theft by swindle was the defendant's theory of the case and the court upheld refusal of the instruction because there was insufficient evidence to support the theory. The issue here is whether or not the jury could have rationally found that Koop attacked Aloma in a fit of passion.

The record shows evidence of on-going discord and a generally volatile relationship. Koop testified that prior to the attack he felt "torqued" and at his "wits' end." The disagreement about the table and chairs was the final provocation. It is possible, given the attempted first degree manslaughter option, the jury might have found appellant guilty of attempted first degree manslaughter and not second degree murder. The jury could reasonably infer the relationship between Myles and Aloma Koop resulted in appellant's uncontrollable anger.

## DECISION

In an attempted murder prosecution where the defendant claims the attack took place in the heat of passion, and the record contains evidence tending to support that claim, the trial court must give a jury instruction on attempted first degree manslaughter.

Affirmed in part, reversed in part and remanded.