Jeffrey Ames HUGHES, Petitioner,

v.

James MATHEWS, Warden, Respondent.

No. 76–C–626.

United States District Court,
E. D. Wisconsin.

Sept. 1, 1977.

Post Conviction Defense Project by Charles B. Vetzner, Madison, Wis., for petitioner.

Bronson C. La Follette, Atty. Gen. by Pamela Magee-Heilprin, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

In this habeas corpus action, the petitioner challenges the constitutionality of the Wisconsin supreme court's ruling that a legally sane defendant charged with first degree murder may not introduce evidence of his diminished mental state at the time of the alleged criminal act to prove his incapacity to form a specific intent to kill. *Hughes v. State,* 68 Wis.2d 159, 227 N.W.2d 911 (1975). I find that the petition must be granted.

The controlling facts are not in dispute. The petitioner was convicted of two counts of first degree murder after a jury trial in the circuit court for Milwaukee County and was sentenced to two consecutive terms of life imprisonment. The murders culminated a period of marital strife between the petitioner and his estranged wife, one of

the two murder victims. The second victim was a neighbor who attempted to restrain the petitioner during the fatal confrontation. A full description of the event is set forth in detail in *Hughes v. State,* supra.

The petitioner's initial pleas were not guilty and not guilty by reason of mental disease or defect, pursuant to Wis.Stat. § 971.06(d). However, after reviewing the report of a psychiatrist appointed by the court to examine the petitioner, Mr. Hughes withdrew his plea of not guilty by reason of mental disease or defect and proceeded only on a plea of not guilty. At a pretrial conference, the petitioner's counsel stated that it was the defendant's theory that he could only be guilty of second degree murder because he had lacked the specific intent required for a first degree murder conviction. A determination was made that the petitioner was competent to stand trial, and a jury trial occurred in March, 1974.

At the trial, the defense did not present any witnesses to contest the state's evidence concerning the petitioner's actions on the night in question. As its sole witness, the defense called a psychiatrist to testify concerning the petitioner's mental state at the time of the criminal acts. The trial court granted a motion by the prosecution to exclude the psychiatrist's testimony based on the decisions of the Wisconsin supreme court in *Sprague v. State,* 52 Wis.2d 89, 187 N.W.2d 784 (1971), and *Curl v. State,* 40 Wis.2d 474, 162 N.W.2d 77 (1968). The petitioner's counsel then made the following offer of proof regarding the psychiatrist's proposed testimony: that Mr. Hughes

". . . was suffering from a depraved mind and that he was, in forensic psychiatry, termed an antisocial personality or a psychopath, and that an abnormal mental condition prevented him from forming the specific intent to kill."

The petitioner rested without offering any other evidence. The case went to the jury with instructions on both first and second degree murder. The jury returned with guilty verdicts on two counts of first degree murder.

The Wisconsin supreme court affirmed both the judgment of conviction and the trial court's order denying the petitioner's post-trial motions. *Hughes v. State,* supra.

The petitioner claims here that the trial court's exclusion of the proffered psychiatric testimony violated his fourteenth amendment due process right to rebut the presumption that he intended to kill his victims. Had he chosen to plead not guilty by reason of mental illness, he could have offered such proof, under the state's bifurcated system, at a second phase of the trial. The issue here is whether in the absence of an insanity plea the state may constitutionally deny him the right to offer such evidence at the trial wherein the jury is instructed that the defendant is presumed to have intended the natural and probable consequences of his acts.

## I. THE WISCONSIN LAW ON INSANITY AND INTENT

Under Wisconsin's bifurcated trial system, a defendant charged with murder may raise the defense of insanity by pleading "not guilty by reason of mental disease or defect" pursuant to Wis.Stat. § 971.06(d). Such a plea may be joined with a general plea of "not guilty." *Id.* When a case in which both pleas have been joined goes to trial, it is tried in two phases. In the first phase, the issue of guilt is tried; in the second phase, it is determined whether the defendant was legally insane at the time of the offense and should therefore be excused from responsibility although guilty of the offense. See Wis.Stat. § 971.175; *State ex rel. La Follette v. Raskin,* 34 Wis.2d 607, 150 N.W.2d 318 (1967); *State v. Shoffner,* 31 Wis.2d 412, 143 N.W.2d 458 (1966). In the latter case, the technique of employing the American Law Institute's standards on insanity was coupled with the placing of the burden of proof on the question of insanity upon the defendant. This was labelled as "an experiment in this perplexing field." 31 Wis.2d at 925, 143 N.W.2d at 464.

In its disposition of Mr. Hughes' appeal, the Wisconsin supreme court reaffirmed a

1274

line of decisions holding that psychiatric testimony concerning a defendant's capacity to form a criminal intent is admissible *only* in support of the plea of not guilty by reason of mental disease or defect; i. e. only during the second phase of the bifurcated trial. *Muench v. State,* 60 Wis.2d 386, 395, 210 N.W.2d 716 (1973); *State v. Anderson,* 51 Wis.2d 557, 564, 187 N.W.2d 335 (1971); *State v. Hebard,* 50 Wis.2d 408, 184 N.W.2d 156 (1971); *Curl v. State,* 40 Wis.2d 474, 162 N.W.2d 77, cert. denied, 394 U.S. 1004, 89 S.Ct. 1601, 22 L.Ed.2d 781 (1969).

The policy underlying the exclusion of such evidence was explained in *State v. Hebard,* supra, 50 Wis.2d at 420–21, 184 N.W.2d at 163, as follows:

"In accepting the establishment of insanity as the measuring stick for accountability for one's action, this court declined the invitation to permit the sociopath or emotionally disturbed individual, legally sane by the applicable test, to escape being held accountable for criminal acts by pleading or establishing an impairment of the capacity to form intent, except on the issue of insanity and in the insanity phase of the trial where the trial is bifurcated. . . ."

In *Curl v. State,* supra, 40 Wis.2d at 484, 85, 162 N.W.2d at 83, the court stated: "Judge and jury ought not be required to identify, classify and evaluate all categories and classifications of human behavior beyond the establishing of the fact of insanity."

These decisions are based on a determination by the Wisconsin court that, as a matter of policy, only a defendant who challenges his legal sanity is to be permitted to rebut the presumption that one intends the natural consequences of his acts, and this can only be done at the second phase of the bifurcated trial. This viewpoint has been asserted in six cases (including the one at bar) by a unanimous state supreme court. With a full awareness of this well-established state policy, I nevertheless find it necessary to hold that such policy determination does not withstand constitutional scrutiny.

## II. PROOF OF SPECIFIC INTENT

■ In *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970), the United States Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged." Accord, *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The petitioner claims to have been convicted in violation of this constitutional precept. He cogently urges that by erecting a presumption which, in effect, is conclusive that all legally sane persons have the capacity to form an intent to kill, the Wisconsin supreme court has relieved the state of its burden to prove a fact necessary for a first degree murder conviction: specific intent to kill.

First degree murder, for which the punishment is life imprisonment, is defined in Wis.Stat. § 940.01(1) as "caus[ing] the death of another human being with intent to kill that person or another . . . ." Intent to kill is defined in Wis.Stat. § 940.01(2) as "the mental purpose to take the life of another human being" and is often referred to in decisions of the Wisconsin supreme court as "specific intent to kill." See e. g. *Holmes v. State,* 63 Wis.2d 389, 399, 217 N.W.2d 657, 663 (1974).

Second degree murder, which is punishable by imprisonment of not less than 5 nor more than 25 years, is defined in Wis.Stat. § 940.02 as "caus[ing] the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life . . . ."

■ The Wisconsin legislature has reserved conviction of first degree murder and the severe punishment of life imprisonment only for those murders accomplished with a specific intent to kill. Neither intent to kill nor intent to do harm constitute elements of the offense of second degree murder, since § 940.02 "does not require the existence of any particular state of mind in the actor at the time of the crime . . . ."

*Wagner v. State,* 76 Wis.2d 30, 48, 250 N.W.2d 331, 341 (1977). Thus, where the critical issue in a murder case is whether the defendant committed first or second degree murder, the focus of the trial is upon the only distinction between those two crimes—the actor's state of mind. It is elementary that the prosecution has the burden of proving that the actor had the specific intent to kill.

The prosecution's burden of establishing this crucial element of specific intent is eased by the rebuttable presumption that a person intends the natural and probable consequences of his acts. *Gibson v. State,* 55 Wis.2d 110, 115, 197 N.W.2d 813 (1972); *State v. Wells,* 51 Wis.2d 477, 483–84, 187 N.W.2d 328 (1971), cert. denied 406 U.S. 907, 92 S.Ct. 1614, 31 L.Ed.2d 817 (1972). The jury at the petitioner's trial was advised as to this presumption by the following portion from Wis.Crim. Jury Instruction 1100:

> "When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all the natural, probable, and usual consequences of his deliberate acts." (Tr. 1119).

The petitioner sought to rebut this presumption by introducing expert psychiatric testimony to show that at the time of the crime he was unable to form the specific intent to take the lives of his victims. Supported by the consistent holdings of the Wisconsin supreme court cited above, the trial court rejected such proposed testimony.

The combined effect of the jury instruction on presumed intent and the exclusion of evidence to prove mental incapacity to form specific intent resulted in a conclusive presumption violative of the Fourteenth Amendment's due process clause. *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

The prosecution might not be able to prove that a defendant acted with specific intent to kill if the defendant could introduce proof to establish that he did not possess the capacity to form such intent. The jury instruction on presumed intent erects a presumption that the defendant *intended* the natural and probable consequences of his acts. Since all defendants in Wisconsin who are determined to be legally sane are prohibited from rebutting this presumed capacity to form an intent to kill, the presumption becomes conclusive. This relieves the state of its responsibility to prove one of the crucial facts necessary for a first degree murder conviction. I hold that this procedure inescapably comes into conflict with *In re Winship.*

The conclusive presumption facing the petitioner in this case is closely analogous to the one found to be violative of due process in *Morissette,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). There the defendant was charged with "unlawfully, wilfully and knowingly" stealing spent bomb casings from a United States government bombing range. At trial, the defendant testified that he thought the casings had been abandoned and that he did not intend to steal them or take them with criminal intent. The trial court refused to allow closing argument or jury instruction on this defense theory, ruling that felonious intent could be presumed by the defendant's act of taking the spent casings.

The United States Supreme Court reversed, reasoning as follows:

> "We think presumptive intent has no place in this case. *A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense.* A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating

presumptions are not to be improvised by the judiciary. Even congressional power to facilitate convictions by substituting presumptions for proof is not without limit. *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519." 342 U.S. at 273–75, 72 S.Ct. at 256. (Emphasis added).

I believe that this reasoning is directly applicable to the presumption in the case at bar that all legally sane defendants have the capacity to form the intent to kill. The prosecution's evidence that the petitioner shot and killed two persons does not automatically establish that the petitioner did so with the mental purpose to take the lives of his two victims, as required for a first degree murder conviction. The proof of the petitioner's act of shooting his victims is given the artificial effect of establishing the requisite specific intent and overrides the petitioner's presumed innocence of first degree murder.

I agree with the Arizona supreme court's holding in *State v. Shaw,* 106 Ariz. 103, 471 P.2d 715, 724–25 (1970), that *Morissette* bars a bifurcated trial procedure wherein a defendant is precluded from introducing evidence to rebut intent during the guilt phase of the proceedings. In *Shaw,* at 471 P.2d p. 724, the Arizona supreme court observed:

"Can this Court say that it is just to pass upon the guilt and innocence of a defendant without allowing all of the evidence available to determine whether he had the mental capacity to commit the crime? . . . To prohibit the introduction of any or all the evidence bearing on proof of insanity at the trial of guilt or innocence would deprive a defendant of the opportunity of rebutting intent, premeditation, and malice, because an insane person could have none. The first trial then would involve only proof that an act of a criminal nature had been committed, and that the defendant committed it. In effect, this gives rise to a presumption of intent, premeditation, or malice which runs counter to the common-law and constitutional concepts of criminal law. The second trial is limited solely to the question of legal insanity, the guilt of the defendant having already been determined. There is no provision, nor realistically could there be, to determine also intent, premeditation, or malice in reduction of the degree of the crime. Thus, the presumption raised in the first trial becomes an irrebuttable presumption."

The respondent relies primarily on *Fisher v. United States,* 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946), a case in which the Supreme Court interpreted the local homicide statutes of the District of Columbia. In *Fisher,* the defendant was charged with first degree murder, which, in the District of Columbia, required proof of deliberation and premeditation. The defendant, although legally sane, was permitted to introduce evidence of his mental deficiencies which he claimed made him incapable of premeditation and deliberation. However, the trial court refused an instruction that the jury could consider the defendant's personality traits in determining his capacity to form the requisite intent.

The Supreme Court affirmed the defendant's conviction. The Court stated that "[t]he administration of criminal law in matters not affected by constitutional limitations or a general federal law is a matter peculiarly of local concern. . . ." *Fisher,* supra, 328 U.S. at 476, 66 S.Ct. at 1325, and refused to disturb the trial court's construction of the District of Columbia law concerning the defense's theory on the issue of criminal intent.

It is significant, however, that the defendant in *Fisher* did not assert a constitutional right to the jury instruction he sought; rather, the defendant's arguments appear to have been grounded on the law of the District of Columbia and other states. Thus, the Supreme Court was not faced with the constitutional argument advanced in the case at bar. I believe that the decision was limited by the due process analysis in the later Supreme Court cases of *Morissette* and *In re Winship.*

This order intrudes upon the established policy of the State of Wisconsin, and it requires changes in a program adopted by the state legislature and buttressed by several deliberated holdings of the state supreme court. Accordingly, if the respondent desires to appeal this order, a stay for that purpose will be granted.

Therefore, IT IS ORDERED that the petition for a writ of habeas corpus be and hereby is granted, unless within 60 days the state of Wisconsin notifies the petitioner and this court of its intention to retry the defendant. In the latter event, the issuance of the writ will be permanently stayed provided such trial is actually commenced within 90 days after such notice.