STATE of Minnesota, Plaintiff,

v.

Thomas J. BOUWMAN, Defendant.

No. 82–546.

Supreme Court of Minnesota.

Dec. 30, 1982.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Stuart Mogelson and Rick Osborne, Asst. County Attys., Minneapolis, for plaintiff.

William R. Kennedy, Hennepin County Public Defender, Patrick J. Sullivan and Craig E. Cascarano, Asst. Public Defenders, Minneapolis, for defendant.

TODD, Justice.

Thomas J. Bouwman has been indicted on two counts of murder in the first degree. Bouwman has pleaded not guilty and not guilty by reason of mental illness to both charges. The State has made a motion *in limine,* requesting the trial court to restrict the testimony of Bouwman's expert psychiatric witnesses solely to the issue of whether Bouwman knew at the time of the offense the nature of his acts or that those acts were wrong. In addition, the State requested the trial court to prohibit Bouwman from inquiring of those witnesses whether he intended or premeditated the killings or whether he possessed the requisite mental state for lesser degrees of homicide. The trial court denied the motion. Bouwman then elected to have a unitary trial. The trial court then certified the following question to this court.

May the court admit, at the trial of a defendant charged with murder in the first degree, expert psychiatric opinion testimony (not offered to establish a defense under Minn.Stat. § 611.026) that the defendant, at the time of the alleged

crime, lacked the mental capacity to premeditate the killings or to form the specific intent to kill?

We answer the certified question in the negative.

█ 1. The certified question addresses the role of psychiatric evidence as it relates to the obligation of the state to establish beyond a reasonable doubt that the defendant intended to commit the act charged[1] and, in the case of a first degree murder charge, that the defendant had premeditated the act. We first observe that the state's burden of proof is totally unaffected by whether or not the defendant pleads not guilty by reason of insanity. This occurs under Minnesota law because the defendant has the burden of establishing mental illness as a defense.[2] Thus the issue of a plea of mental illness is not involved in answering the certified question and the answer we give applies in all criminal cases as it relates to the obligation of the state to establish as part of its case, the intent or premeditation of the defendant.

█ In determining this issue it is essential that we differentiate between intent as a fact issue from the question of the mental capacity of the defendant. The state presents factual evidence as to the commission of the particular act the defendant has been charged with committing. Direct evidence as to the fact of intent is usually impossible because of the subjective nature of this element of the crime. What a person intends lies within the recesses of that individual person's mind. Yet, in determining this question, inquiry is made under an objective standard, namely, the standard that people operate within the broad boundaries of what is deemed normal or sane. To put it another way, the law presumes people, including the defendant standing trial, are responsible for their acts, *i.e.*, that they have the capacity to intend what they do. Minn.Stat. § 611.025 (1980).

█ Within this ambit of normality or sanity, jurors, relying on their sensory perceptions, experiences in life, and their common sense, consider the manifestations of the defendant's conduct and determine if the defendant formed the specific intent to do what he did. The defendant has the right to offer evidence which disputes the physical facts upon which the inference of the fact of intent is sought to be established by the prosecution. However, psychiatric evidence is of no value at this part of the trial since it does not relate to the physical evidence upon which the jury is to determine the issue of intent. Rather, such expert testimony relates to the mental capacity of the defendant and is properly part of defendant's case wherein he must establish the defense of mental illness by the appropriate standard. Such psychiatric evidence relative to the state's obligation to establish the intent of the defendant is argumentative and of no probative value.

█ When, however, the insanity defense is asserted, the inquiry shifts to a different dimension. The question becomes whether the defendant, even though he has manifested the specific intent to do the thing that he did, was laboring under such a defect of reason that he lacked the capacity to form the intent that was otherwise manifested. The question becomes whether the defendant was acting outside the ambit of sanity and normality as delineated by the *M'Naghten* rule incorporated in Minn.Stat. § 611.026 (1980).

█ On this issue of capacity, expert psychiatric testimony has probative value. The inquiry is no longer on the direction the defendant's mind took but on how the defendant's mind worked. Here psychiatry can be of help.

█ There is a distinction, which society understands and accepts, between a verdict of "not guilty" and a verdict of "not guilty by reason of insanity." Because this is so,

---

1. In certain crimes the nature of the act has been used by the legislature to permit the inference of the requisite intent.

2. In some jurisdictions the prosecution has the burden of establishing the sanity of the defendant. *See* Annot., 17 A.L.R.3d 146-157–61 (1968 & Supp.1982).

it is important that the inquiry at trial into the defendant's criminal responsibility for his acts proceeds in two stages, the first to determine intent and the second to determine capacity.

█ 2. Also necessarily involved in answering the certified question is the role of psychiatric evidence as it may relate to a lesser degree of guilt for the commission of a specific act—generally described as the doctrine of diminished responsibility. In *Bethea v. United States,* 365 A.2d 64, 83–92 (D.C.1976), the reasons for rejecting this concept are stated with clarity and logic and we adopt the reasoning of the District of Columbia Court of Appeals and its conclusion.

> By contradicting the presumptions inherent in the doctrine of mens rea, the theory of diminished capacity inevitably opens the door to variable or sliding scales of criminal responsibility. · * * * We should not lightly undertake such a revolutionary change in our criminal justice system.

365 A.2d at 88.

The law recognizes no degree of sanity. Applying socially and morally acceptable standards a line has been drawn—on one side are the legally sane, on the other side are the legally insane.

> [T]o the psychiatrist mental cases are a series of imperceptible gradations from the mild psychopath to the extreme psychotic, whereas criminal law allows for no gradations. It requires a final decisive moral judgment of the culpability of the accused. For the purposes of conviction there is no twilight zone between abnormality and insanity. An offender is wholly sane or wholly insane.

*Holloway v. United States,* 148 F.2d 665, 667 (D.C.Cir.1945).

█ There are exceptions. An example is intoxication. *See* Minn.Stat. § 609.-075 (1980). There are, however, significant evidentiary distinctions between "partial or relative insanity" and conditions such as intoxication, medication, epilepsy, infancy, or senility. These are susceptible to quantification and lay understanding. Thus, we find no inconsistency in permitting evidence of intoxication as it relates to mens rea. We agree with the statement in *Wahrlich v. State,* 479 F.2d 1137, 1138 (9th Cir.1973):

> Alternatively, Wahrlich contends that Arizona's admission of the evidence of age and of intoxication for the purpose of determining specific intent and its exclusion of psychiatric evidence offered for the same purpose create an unreasonable or arbitrary classification. We think not. Exposure to the effects of age and of intoxicants upon state of mind is a part of common human experience which fact finders can understand and apply; indeed, they would apply them even if the state did not tell them they could. The esoterics of psychiatry are not within the ordinary ken. The differences are sufficiently manifest to thwart constitutional attack.

We reject the doctrine of diminished responsibility.

The certified question is answered in the negative.

WAHL, Justice (dissenting).

I must respectfully dissent. A defendant charged with murder in the first degree must be permitted to offer relevant and competent expert psychiatric opinion testimony on the issues of premeditation and specific intent. To hold otherwise would be to violate the defendant's constitutional right to present evidence. *Washington v. Texas,* 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019 (1967); *Hughes v. Mathews,* 576 F.2d 1250, 1255–56 (7th Cir. 1978), *cert. dismissed sub nom. Israel, Warden v. Hughes,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978).

In *State v. Hoffman,* decided by the court today, the trial court, in a unitary trial, admitted expert psychiatric opinion testimony which was relevant to both the defense of insanity and the issues of premeditation and intent, then, by instruction, limited the jury's consideration of that testimony to the insanity defense. In *Bouwman,* the state moved before trial to limit the testimony of defendant's expert psychiatric

witnesses to the issue of insanity and to suppress all testimony of these witnesses on the issues of premeditation and intent. The trial court denied the motion, concluding that Rule 702 of the Minnesota Rules of Evidence permits expert testimony if it will assist the untrained trier of facts in formulating intelligently a correct resolution of a particular fact issue and that premeditation and intent are facts in issue in determining whether defendant committed murder in the first degree as charged or a lesser included crime. The trial court then certified to this court, as important and doubtful, the following question:

> May the court admit, at the trial of a defendant charged with murder in the First Degree, expert psychiatric opinion testimony (not offered to establish a defense under Minn.Stat. § 611.026) that the defendant, at the time of the alleged crime, lacked the mental capacity to premeditate the killing or to form the specific intent to kill?

The majority of jurisdictions which have considered this question have allowed the use of psychiatric testimony on the issues of intent and premeditation.[1] The basic premise of criminal law is that without the necessary *mens rea,* or guilty mind, there can be no criminal liability.[2] W. LaFave & A. Scott, Jr., Handbook on Criminal Law 192 (1972). The *mens rea* requirement is usually described as an intent to accomplish a specific purpose. In Minnesota, for example, a person is guilty of murder in the first degree if he "[c]auses the death of a human being *with premeditation and with intent to*

*effect the death of such person or of another."* Minn.Stat. § 609.185 (1980) (emphasis added). An actor is said to have intended the crime when he "either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result." Minn.Stat. § 609.02, subd. 9(3) (1980).

The majority opinion fails to consider the person who is unable, because of some mental disorder, to form the intent required by our statutes. It is not a question of partial responsibility for the offense but of a defendant taking full responsibility for a lesser grade of the offense. As Weihofen notes in his article advocating the use of psychiatric testimony for purposes other than the insanity defense,

> the person is relieved from liability for murder in the first degree, not because the courts are dealing with him less harshly than with others, but because, judged by exactly the same standard, his act, being without "deliberation," or "premeditation" (his condition rendering him incapable of these states of mind) was not murder in the first degree, but some lesser offense.

Weihofen, *Partial Insanity and Criminal Intent,* 24 Ill.L.Rev. 505, 514 (1930) (footnote omitted).

The District of Columbia Court of Appeals ruled, in 1972, that "expert testimony as to a defendant's abnormal mental condition may be received and considered, as tending to show * * * that defendant did not have the specific mental state required for a particular crime or degree of crime."

---

1. States which have made some provision for admitting psychiatric evidence on the elements of a crime include Arizona, *State v. Shaw,* 106 Ariz. 103, 471 P.2d 715 (1970); California, *People v. Wells,* 33 Cal.2d 330, 202 P.2d 53 (1949), *cert. denied,* 338 U.S. 836, 70 S.Ct. 45, 94 L.Ed. 511 (1949); Colorado, *Battalino v. People,* 118 Colo. 587, 199 P.2d 897 (1948); Connecticut, *State v. Donahue,* 141 Conn. 656, 109 A.2d 364 (1954), *cert. denied and appeal dismissed,* 349 U.S. 926, 75 S.Ct. 778, 99 L.Ed. 1257 (1955); Hawaii, *State v. Santiago,* 55 Hawaii 162, 516 P.2d 1256 (1973); Idaho, *State v. Clokey,* 83 Idaho 322, 364 P.2d 159 (1961); Iowa, *State v. Gramenz,* 256 Iowa 134, 126 N.W.2d 285 (1964); Kentucky, *Mangrum v. Common-*

*wealth,* 19 Ky. LR 94, 39 S.W. 703 (1897); Nebraska, *Starkweather v. State,* 167 Neb. 477, 93 N.W.2d 619 (1958); New Jersey, *State v. DiPaolo,* 34 N.J. 279, 168 A.2d 401 (1961), *cert. denied,* 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80 (1961); New Mexico, *State v. Padilla,* 66 N.M. 289, 347 P.2d 312 (1959); New York, *People v. Moran,* 249 N.Y. 179, 163 N.E. 553 (1928); Ohio, *State v. Nichols,* 3 Ohio App.2d 182, 209 N.E.2d 750 (1965); Utah, *State v. Green,* 78 Utah 580, 6 P.2d 177 (1931).

2. There is an exception for certain strict liability crimes that, by statute, require only an *actus reus* or bad act.

*United States v. Brawner,* 471 F.2d 969, 998 (D.C.Cir.1972). The court noted that the doctrine "has nothing to do with 'diminishing' responsibility of a defendant because of his impaired mental condition, but rather with determining whether the defendant had the mental state that must be proved as to all defendants." *Id.* (footnote omitted).

It is true that in 1946 the United States Supreme Court held that it was not error for a trial court in the District of Columbia to refuse to instruct the jury that they should consider evidence of the defendant's mental deficiency, concededly not amounting to legal insanity, to determine whether he was guilty in the first or second degree. *Fisher v. United States,* 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946). In 1978, however, the United States Supreme Court refused to hear a case in which the lower court had reached the opposite conclusion. *Hughes v. Mathews,* 440 F.Supp. 1272 (E.D. Wis.1977), *aff'd* 576 F.2d 1250 (7th Cir. 1978), *cert. dismissed, sub nom. Israel, Warden v. Hughes,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978). *Hughes v. Mathews* was a habeas corpus action brought in federal court after the Wisconsin Supreme Court refused to allow evidence of the defendant's abnormal mental condition on the issue of intent. *Hughes v. State,* 68 Wis.2d 159, 227 N.W.2d 911 (1975). In granting the habeas corpus writ, the district court concluded that, in *Fisher,* the United States Supreme Court had relied on District of Columbia law and had not ruled on the question of a defendant's constitutional rights to a jury instruction which would allow consideration of evidence of defendant's mental capacity on the issue of intent.[3]

The Supreme Court of Wisconsin then allowed the admission of psychiatric testimony on the issues of intent and premeditation, *Schimmel v. State,* 84 Wis.2d 287, 267 N.W.2d 271 (1978), until 1980, when it expressly overruled Schimmel, holding that a court can properly exclude "from introduc-

tion at the guilt phase of the trial * * * expert opinion testimony tending to prove or disprove the defendant's capacity to form the requisite criminal intent." *Steele v. State,* 97 Wis.2d 72, 98, 294 N.W.2d 2, 14 (1980). The court reasoned that the American Law Institute (ALI) insanity standard, which is used in Wisconsin, is very similar to the test for demonstrating a defendant's inability to form intent, or "diminished capacity," and that "the use of the causative doctrine in the guilt phase of the trial would vitiate the purpose of the bifurcated trial." *Id.* 97 Wis.2d at 88, 294 N.W.2d at 9.

Our criminal responsibility statute provides that a person "shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason * * * as not to know the nature of his act, or that it was wrong." Minn.Stat. § 611.026 (1980). A defendant in Minnesota may choose to bifurcate his trial in order to try the guilt and insanity issues separately. Minn.R.Crim.P. 20.02, subd. 6(2) (1982). The election is that of the defendant, not of the state. A defendant will ordinarily choose to bifurcate trial of the guilt and insanity issues when there is some possibility of failure of the state's proof that defendant was indeed the one who committed the crime. In fairness then, the defendant is not asked to say to the jury, "I did not commit the crime, but if I did I was crazy." Furthermore, in this case, as in the *Hoffman* case, where the defendants chose not to bifurcate, none of the arguments for exclusion is valid. Allowing psychiatric evidence on the issues of intent and premeditation would not undermine the bifurcated trial procedure or threaten a defendant's fifth-amendment rights. *See Hughes v. Mathews,* 576 F.2d at 1259.

The use of psychiatric testimony on the issues of intent and premeditation has been compared by some courts with the defense of voluntary intoxication. *Hopt v. People,*

---

3. The District of Columbia Court of Appeals in *United States v. Brawner,* 471 F.2d 969 at 999–

1000 (D.C.Cir.1972) reached the same interpretation of *Fisher* as did the Seventh Circuit.

104 U.S. 631, 26 L.Ed. 873 (1881); *Brawner,* 471 F.2d at 999; *State v. Padilla,* 66 N.M. 289, 294, 347 P.2d 312, 315 (1959). It is hard to disagree with the District of Columbia Court of Appeals that

[n]either logic nor justice can tolerate a jurisprudence that defines the elements of an offense as requiring a mental state such that one defendant can properly argue that his voluntary drunkenness removed his capacity to form the specific intent but another defendant is inhibited from a submission of his contention that an abnormal mental condition, for which he was in no way responsible, negated his capacity to form a particular specific intent, even though the condition did not exonerate him from all criminal responsibility.

*Brawner,* 471 F.2d at 999.

Although voluntary intoxication is no excuse for crime, "it may in many instances be relevant to the issue of intent. One class of cases where drunkenness may be relevant to the issue of intent is the category of crimes where specific intent is required." *Heideman v. United States,* 259 F.2d 943, 946 (D.C.Cir.1958) (footnotes omitted). In Minnesota, voluntary intoxication is a defense if specific intent is an essential element of the crime in question. *State v. Kjeldahl,* 278 N.W.2d 58 (Minn.1979). Psychiatric evidence which bears on the question of a defendant's ability to form specific intent is, to my mind, as relevant, significant and admissible as is evidence of voluntary intoxication.

There are imperfections in our system, none of them more troublesome than those in the area where psychiatry meets the law. We must, however, continue to learn from psychiatry and to reflect in the law the best of what is known about the human mind. Difficult as it is, we must try, particularly when we are confronted with a right as basic as the defendant's right to have the state prove beyond a reasonable doubt each element of his alleged crime and to, himself, present evidence to rebut the state's proof.

