**STATE of Minnesota, Respondent,**

v.

**Layne ROBERTS, Appellant.**

**No. C7–83–1810.**

Court of Appeals of Minnesota.

June 19, 1984.

Hubert H. Humphrey, III, Atty. Gen., Michael K. Jordan, Sp. Asst. Atty. Gen., St. Paul, Michael Lynch, Kandiyohi County Atty., Willmar, for respondent.

C. Paul Jones, Minn. State Public Defender, Kathy King, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Defendant appeals a judgment of conviction for burglary, entering an occupied dwelling without the consent of the person in lawful possession and with intent to commit a crime, Minn.Stat. § 609.58, subd. 2(2) (1982). He does not deny committing a trespass, entering a dwelling without consent of the owner, Minn.Stat. § 609.605(6) (1982), but he contends that evidence was insufficient to establish that his entry was with intent to commit any crime. Defendant also claims the trial court committed reversible error by granting the prosecutor's motion to exclude testimony on the prior sexual relationship of defendant with Karen Quast, who rented the dwelling defendant entered. Defendant also claims the trial court erred in failing to instruct the jury on the lesser included offense of trespass.

The state contends that the jury could infer intent from circumstantial evidence of noise and forcefulness of defendant in entering an unused door on the premises.

We reverse and remand for entry of a conviction for trespass, Minn.Stat. § 609.-605(6) (1982).

## FACTS

Karen Quast, age 23, and appellant, Layne Roberts, age 21, were "really good friends" for several months through about February 1983. During the time of their friendship Roberts frequently visited the residence of Quast, sometimes after 10:00 or 11:00 p.m. Roberts had a good relationship with Quast's infant son. In February 1983, Quast asked Roberts to stop coming over to her house, and Roberts' visits ended.

Between 10:30 and 11:00 p.m. on May 4, 1983, Roberts rode his bicycle to the Quast residence in Willmar. Quast was a renter in the downstairs two-bedroom unit of a duplex. Quast was not at home. Her son was in bed and an acquaintance, Jalaine Netjes, was babysitting. Netjes and her acquaintance, Michael Reed, age 20, were watching TV in the living room.

Roberts approached the house at an unused rear entrance. He opened the door and entered an unfinished porch area that was cluttered with many items, including furniture. He then approached the inside door, an entry to the kitchen of the unit. That door was pushed and partially opened. A table was against the inside of the door and a chain latch was fastened to the door. The door was opened with enough force so that the casing holding the chain started coming away from the wall.

Netjes and Reed, and an upstairs resident, heard banging noises from the area of the porch. A two by four board was kept over the inside of the outer porch door. Roberts admitted he may have pushed the board away from the wall and he suggested it wasn't well attached. He said he fell against the inside door when climbing over a couch sitting between the doors.

Reed came to the kitchen door, followed by Netjes. They could see Roberts' face through the opening of the door. Both recognized him. Netjes had seen him at the place at least five times before. Reed greeted Roberts after seeing him. Reed moved the table, unlocked the door chain and opened the door to let Roberts come inside.

Roberts was inside for "a couple minutes." Roberts used a pan to pound the casing back against the wall. The upstairs neighbor called down to ask what was going on. Netjes answered that someone opened the back door and she then told Roberts he should leave. Netjes thought Roberts said something about bringing a card for the Quast child, who had a birthday two days earlier. Netjes and Reed recalled Roberts saying, "Back to jail I go. Back to jail I go," and saying either "You didn't see or hear anything" or "You guys didn't see me here tonight did you?"

Roberts left through the front door.

Roberts testified he came to see Quast and her son and said he had no intention to commit any crime inside the building. He noticed the TV was on and he saw a stove light on in the kitchen. He admits entering a dwelling without the consent of the resident.

Defendant moved for a judgment of acquittal before and after the jury verdict of his guilt. The motions were denied and he appeals the conviction.

Prior to trial the prosecutor moved to exclude testimony on the sexual relationship of Quast and Roberts early in 1983. The court decided the testimony was irrelevant. Defendant took exception, arguing the testimony bore upon the question of his intention when entering Quast's house.

## ISSUES

1. Is the evidence sufficient to establish beyond a reasonable doubt that defendant committed a burglary?

2. Did the trial court abuse its broad discretion in excluding evidence of defendant's prior relationship with the resident of the dwelling he entered?

## ANALYSIS

1.

Defendant was charged with burglary under Minn.Stat. § 609.58, subd. 2 (1982). The statute (now amended) provided:

Whoever enters a building without the consent of the person in lawful possession ... with intent to commit a crime in it ... commits burglary....

Subd. 2(2) establishes a sentence for burglary of a "dwelling."

■ Absent an intent to commit a crime in the building, the same conduct constitutes an included misdemeanor offense of trespass.[1] The trespass statute, Minn.Stat. § 609.605(6) (1982) describes as a misdemeanor the intentional action of one who:

Occupies or enters the dwelling of another, without claim of right or consent of the owner....

The Minnesota Supreme Court has established a standard for reviewing the sufficiency of evidence:

In reviewing a claim of sufficiency of the evidence we must determine whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged.... The evidence must be viewed in the light most favorable to the prosecution and it is necessary to assume that the jury believed the state's witnesses and disbelieved any contrary evidence. (citation omitted)

*State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981).

■ Evidence on the intent of defendant in entering the Quast home is circumstantial. A jury verdict on that element cannot be sustained unless the "reasonable inferences from such evidence are consistent only with defendant's guilt and inconsistent with any rational hypothesis except that of his guilt." *State v. Kotka*, 277 Minn. 331, 334, 152 N.W.2d 445, 448 (1967), cert. denied, 389 U.S. 1056, 88 S.Ct. 806, 19 L.Ed.2d 853 (1968).

■ Legitimate inferences from the record do not reasonably permit a finding that defendant intended to commit a crime in the Quast home. Even viewed most

favorably, the evidence permits only speculation on defendant's intent.

The evidence shows neither a secretive entry nor an act of hostility. Either might strengthen the state's case. The defendant entered the home in a clumsy and open manner and he left when asked.

It is true that the jury might disbelieve the defendant's denial of an intent to commit a crime. They might believe he was "up to no good." Still, these conclusions are far short of those which establish a critical ingredient of the charge, the "intent to commit a crime" in the building.

The state argues that the noisy entry suggests a resolve to steal. Alternatively, the state suggests a spurned lover could be expected to commit a sex offense. These arguments are based on sheer speculation.

Circumstantial evidence supports various rational explanations of the facts which would not permit a burglary conviction. The evidence tends, for example, to support a finding that defendant had no intentions outside of a desire to visit Quast, and that his mistake, a trespass, was the fruit of a bungling disposition.

■ We cannot sustain a burglary conviction on the evidence in this case. Although reversal on sufficiency of evidence is extraordinary action, it must occur when, as here, "we entertain such grave doubt as to defendant's guilt" and where reversal is "in the interest of justice." *State v. Housley*, 322 N.W.2d 746, 751 (Minn.1982).

2.

In *Raleigh v. Ind. Sch. Dist. # 625*, 275 N.W.2d 572, 576 (Minn.1978), the Minnesota Supreme Court said:

The trial court has wide latitude in determining relevant evidence, and its decision controls unless this discretion was abused.

■ The relationship of defendant and Karen Quast was a primary fact to be

---

**1.** Minn.Stat. § 609.04 (1982) describes an included offense as one "necessarily proved if the crime charged were proved."

considered in evaluating defendant's intention when entering the Quast home. It was reversible error to deny admission of that evidence. While review of this issue is unnecessary in light of our decision on the sufficiency of evidence, our observations on the issue solidify our great concern respecting a felony conviction in this case.

### DECISION

Evidence in the case is insufficient to sustain the conviction of defendant on a charge of burglary. The jury verdict permits a conviction of defendant for the included offense of trespass under Minn.Stat. § 609.605(6) (1982). See Rule 28.02(12), Minn.Rules of Criminal Procedure. Imprisonment of defendant since trial precludes further sentencing on the trespass conviction.

Reversed and remanded with instructions for entry of a judgment of conviction of defendant for a misdemeanor trespass offense.