STATE of Minnesota, Respondent,

v.

Richard ST. CYR, Appellant.

No. C4–83–1201.

Court of Appeals of Minnesota.

Aug. 21, 1984.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka County Atty., Anoka, for respondent.

C. Paul Jones, Minn. State Public Defender, Jonathan G. Steinberg, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., PARKER, and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Appellant Richard St. Cyr appeals his jury conviction of attempted murder in the second degree in violation of Minn.Stat.

§§ 609.19(1), 609.17, and 609.11 (1982) and assault in the second degree in violation of Minn.Stat. §§ 609.22 and 609.11 (1982). He claims the evidence was insufficient because he lacked the specific intent to commit the crimes. He also claims the trial court erred in excluding expert psychiatric testimony on whether he had the requisite intent. We affirm.

## FACTS

After work on February 16, 1982, appellant and a friend, Lisa Fiore, went to several bars looking for appellant's pool league. After spending the evening playing pool and drinking, they arrived at Raffaele's Supper Club around 12:30 a.m. They went downstairs and ordered drinks. Toward closing time, Fiore went upstairs and was invited to sit at the bar by Ken Nelson to have a cup of coffee. Meanwhile appellant came upstairs. Soon, a fight broke out between Nelson and appellant. Ralph Virgillo, owner of Raffaele's, climbed over the bar to break up the fight. Appellant was eventually removed from the bar. Appellant, Virgillo, Nelson, Del Zentgraf, a patron, and Mary Gilligan, a bartender, went outside.

As appellant either tumbled or was thrown down the stairs he grabbed a gold chain that was around Virgillo's neck and pulled it off. After a further struggle the chain was retrieved. Appellant and Fiore claimed at trial that appellant was beaten up for about five minutes by Virgillo, Nelson and Zentgraf.

Upon appellant's release he went to the trunk of his car. Fiore ran to the car, grabbed appellant and asked him what he was doing. Appellant knocked Fiore down and grabbed a pistol from the trunk. He fired four shots in the direction of Nelson, Virgillo, Zentgraf and Gilligan as they were returning to the bar. Appellant followed them inside. He spotted Nelson and aimed the gun at him. Nelson threw a chair at appellant in an attempt to defend himself. Appellant ordered Nelson down on all fours and placed a gun in his back. While pointing the gun, appellant threatened Nelson, saying "I got you sucker; I got your life in my hands; I'm going to kill you."

Meanwhile, Virgillo, concealing a nightstick, told appellant to put the gun down. Virgillo testified that he saw appellant's finger moving on the trigger. Virgillo swung the nightstick, hitting appellant's wrist and/or gun, which discharged. The bullet passed through Nelson's shirt without injuring him. Appellant was subdued and later arrested by the police. At about 2:30 a.m. a blood test was taken and appellant's blood alcohol content was measured at .17.

Appellant was charged with attempted murder in the first degree, attempted murder in the second degree, and assault in the second degree and convicted by a jury of the latter two offenses. He was sentenced to concurrent prison terms of 58 and 54 months.

## ISSUES

1. Was the evidence sufficient to convict appellant of the charges?

2. Was expert psychiatric testimony that appellant, at the time of offense, lacked mental capacity to form specific intent admissible into evidence at the trial of a defendant charged with attempted murder in the first degree when mental incapacity was not asserted?

## DISCUSSION

### I

Appellant's principal contention is that the evidence was insufficient to sustain his convictions because the evidence of intoxication at trial negated a reasonable finding that he had the requisite intent to commit the offenses.

■ "Intent" means "that the actor either has the purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result." Minn.Stat. § 609.02, subd. 9(4) (1982). Intent may be proved by circum-

stantial evidence. *State v. Hardimon*, 310 N.W.2d 564, 566 (Minn.1981).

It has frequently been stated that a defendant who seeks to reverse the jury's verdict of conviction bears a heavy burden because of the limited appellate review. *State v. Strimling*, 265 N.W.2d 423, 428 (Minn.1978); *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978); *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980); *State v. Campion*, 354 N.W.2d 573, 578 (Minn.Ct. App.1984); *State v. Roberts*, 350 N.W.2d 448, 451–452 (Minn.Ct.App.1984).

■ That appellant was intoxicated does not compel the conclusion that he could not form the requisite intent. *State v. Kittleson*, 305 N.W.2d 787 (Minn.1981). The jury is free to reject the so-called "intoxication defense" because the question of whether intoxication negates the existence of the culpable mental state is a question of fact. *State v. Wahlberg*, 296 N.W.2d 408, 416 (Minn.1980); *State v. Neumann*, 262 N.W.2d 426, 431 (Minn.1978). There is no presumption that a defendant who has been drinking is incapable of formulating the intent to commit the crime. *Wahlberg*, 296 N.W.2d at 416; *State v. Lund*, 277 Minn. 90, 92, 151 N.W.2d 769, 771 (1967).

■ Here, appellant claims his actions were the result of intoxication, disorientation, fright and confusion. The facts show appellant went to his car, opened his trunk, took out his pistol and fired four shots; this supports the inference that appellant was capable of forming the requisite intent to commit assault by causing fear of bodily harm or death. He then followed Nelson, Virgillo, Zentgraf and Gilligan into the bar, zeroed in on Nelson and aimed at Nelson. He ordered Nelson to get down on all fours and threatened to kill him, saying "I got you sucker; I got your life in my hands; I'm going to kill you."

We unhesitatingly state the evidence was sufficient to convict appellant of the offenses of attempted murder in the second degree and assault in the second degree.

*See State v. Tiessen*, 354 N.W.2d 473 (Minn.Ct.App.1984), issued concurrently.

## II

■ Appellant never claimed he was relying on the defense of mental illness or mental deficiency. One week prior to trial appellant furnished the State with a psychiatric report from Dr. Carl Schwartz in which he gave the opinion that it was "highly unlikely in his paranoid intoxicated state that [appellant] had the ability to manufacture any willful or wrongful intent."

The trial court excluded Dr. Schwartz's testimony in accordance with *State v. Bouwman*, 328 N.W.2d 703 (Minn.1982). *Bouwman* held that expert psychiatric testimony that a defendant, at the time of the alleged crime, lacked the mental capacity to premeditate the killings or to form the specific intent to kill is inadmissible in a first-degree murder prosecution when that testimony is not offered to establish the defense of mental illness. The *Bouwman* decision was followed in *State v. Brown*, 345 N.W.2d 233, 238 (Minn.1984). In light of the Supreme Court's pronouncements in *Bouwman* and *Brown*, the trial court's decision excluding the expert testimony was proper.

## DECISION

The record supports appellant's convictions for attempted murder in the second degree and assault in the second degree, as the evidence is sufficient to show appellant acted with the requisite intent to commit those offenses.

Affirmed.