**STATE of Minnesota, Respondent,**

v.

**Wanda Lee BERGSTROM, Appellant.**

**No. C5-86-2209.**

Court of Appeals of Minnesota.

Oct. 6, 1987.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, for respondent.

John E. Mack, New London, for appellant.

Considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

This appeal is from a judgment of conviction for third degree arson, Minn.Stat. § 609.563, subd. 1(a) (1986). Appellant Wanda Bergstrom moved for a new trial on the ground the verdict was not supported by the evidence. Her motion was denied. We reverse and remand for sentencing on Minn.Stat. § 609.563, subd. 2 (1986), misdemeanor arson.

## FACTS

Appellant Wanda Bergstrom was charged with third degree felony arson, Minn.Stat. § 609.563, subd. 1(a), for setting on fire a bed on which she was seated in a seclusion room of the mental health unit of Rice Memorial Hospital. Bergstrom, who has a history of severe mental illness, had been hospitalized five or six weeks earlier

for treatment of manic depression. She received daily shock treatments until a week before the incident; was being treated with lithium, a powerful drug; and was in seclusion in a locked ward, under constant observation at the time of the incident.

Bergstrom had a history of suicide attempts. On the day of the fire, she told her priest she intended to commit suicide. That afternoon, her psychiatrist informed the charge nurse he was discharging Bergstrom, and that Bergstrom was angry about it and did not want to be discharged. Shortly thereafter, Bergstrom locked herself in a ward bathroom. She was found there with a black belt on the floor, a bent shower rod, and a tipped over chair. The staff concluded Bergstrom was suicidal.

She was removed to a seclusion room, and kept under constant one on one observation. Robert Brenden, a staff member, was posted outside the locked door and was instructed to look in on her about every minute. Brenden testified he observed Bergstrom every 30 or 40 seconds. Bergstrom somehow obtained a match and, sitting on the bed with her back to the door, set fire to the bed. Brenden entered the room when he saw smoke coming from the bed. He found the bedspread in flames. The bedspread and sheets were burned, and Bergstrom's gown and robe were damaged. Bergstrom testified she could not recall the events surrounding the fire. She testified she did not know whether or not her intent was to burn down the room.

Bergstrom pleaded both not guilty and not guilty by reason of mental illness. Her motion for a competency hearing was granted. Minn.R.Crim.P. 20.01, subd. 2. The court received a written report concluding she was competent to stand trial, and ordered a bifurcated trial.[1]

Bergstrom was charged under Minn.Stat. § 609.563, subd. 1(a), felony arson in the third degree. It is conceded that the total fire damage done by Bergstrom was less than $300, but the prosecution proceeded under Minn.Stat. § 609.563, subd. 1(a), claiming Bergstrom intended to damage or destroy property with a value of more than $300, but less than $2500.[2]

The first portion of the bifurcated trial was the trial on the felony charge, to which Bergstrom entered a plea of not guilty. The trial court properly reserved, until the conclusion of this trial, the second part of the trial, on Bergstrom's plea of not guilty by reason of mental illness.

While deliberating on Bergstrom's not guilty defense, the jury asked the court how much influence Bergstrom's mental condition had on her guilt or innocence. The trial court reread to the jury the third degree felony arson degree. Bergstrom objected, claiming this response implied the jury could not consider mental illness on the element of specific intent required to commit arson. The objection was overruled, and the trial court did not expand on its previous instructions relative to the essential elements of the crime. It simply reread the elements of arson in the third degree. The jury found Bergstrom guilty of third degree felony arson.

During the second half of the bifurcated trial, relating to Berstrom's mental illness defense, Bergstrom's psychiatrist, Dr. Richard Kasper, testified Bergstrom was manic depressive, and exhibited suicidal thinking during spells of severe depression. He testified he considered discharging her on the day of the incident, and that, when he saw her five minutes before she was put into seclusion, she was oriented to her surroundings, and on lithium.

Dr. Kasper gave his opinion that Bergstrom was mentally ill at the time of the fire. He was asked, however, whether mental illness was a "substantial factor" in

---

**1.** In a bifurcated trial, the first stage is the defendant's plea of not guilty on the merits, and the second stage is on mental capacity (the plea of not guilty by reason of mental illness) of the defendant. Minn.Stat. §§ 611.025, 611.026 (1986), *cited in State v. Bouwman,* 328 N.W.2d 703, 705 (Minn.1982).

**2.** Under arson in the third degree, if a defendant damages property with a value of less than $300 and has no intention of damaging or destroying property with a value of more than $300, third degree arson is a misdemeanor offense. Minn. Stat. § 609.563, subd. 2.

her action. When the trial court asked him whether or not she knew the "nature of her act" under the M'Naghten rule, he responded that Bergstrom knew she was trying to kill herself.[3] There was no other expert medical testimony.

Bergstrom's priest testified she talked to him about suicide on the morning of the fire. He testified she knew where she was, and she spoke of her husband and children. Bergstrom told him she knew suicide was wrong.

Bergstrom's husband, who visited her the night before the fire, testified she had been communicative and in touch with reality. The nurse, Regina Frawley, testified Bergstrom was responsive and in touch with reality before the fire.

The jury rejected the mental illness defense, and found Bergstrom guilty of third degree arson. She was sentenced to one year and one day, execution stayed with three years' probation. As conditions of probation, she was required to make restitution of $170,[4] the damage caused by the fire, and to continue treatment of her mental disorder.

### ISSUES

1. Did the trial court err when instructing the jury in the first part of the bifurcated trial, by refusing to instruct on Bergstrom's alleged mental illness?

2. Was the jury's verdict rejecting the defense of not guilty by reason of mental illness supported by sufficient evidence?

3. Was the jury's verdict of felony arson supported by sufficient evidence?

### ANALYSIS

#### I.

*Jury Instructions*

Evidence of mental illness is generally not to be considered on the issue of intent in the first part of a trial bifurcated to allow the defendant to present separately a

mental illness defense. *State v. Bouwman*, 328 N.W.2d 703, 705 (Minn.1982).

The supreme court, citing the presumption of mental capacity, stated in *Bouwman*:

Within this ambit of [presumed] normality or sanity, jurors, relying on their sensory perceptions, experiences in life, and their common sense, consider the manifestations of the defendant's conduct and determine if the defendant formed the specific intent to do what he did. The defendant has the right to offer evidence which disputes the physical facts upon which the inference of the fact of intent is sought to be established by the prosecution. However, psychiatric evidence is of no value at this part of the trial since it does not relate to the physical evidence upon which the jury is to determine the issue of intent.

328 N.W.2d at 705; *see also State v. Hoffman*, 328 N.W.2d 709, 717 (Minn.1982) (jury should be instructed evidence of mental capacity is not to be considered on the issue of intent in the first stage of the trial).

In order to convict Bergstrom of third degree arson, the state was required to prove she had the *intent to destroy* or damage property worth more than $300. Minn.Stat. § 609.563, subd. 1(a). The property actually destroyed was worth less. The total figure of $170 claimed by the state included costs of maintenance and cleanup. Since the state could not prove felony arson by the amount of the actual damage, it had to prove beyond a reasonable doubt that Bergstrom intended damage or destruction in excess of $300.

The state maintained that, although Bergstrom was attempting suicide, she had the specific intent to destroy more property in the seclusion room than was necessary to light herself on fire, and that the value of the other property was in excess of $300. The state asserts this intent can be

3. The M'Naghten rule is codified in Minn.Stat. § 611.026 (1986). *Bouwman*, 328 N.W.2d at 705; *State v. Hoffman*, 328 N.W.2d 709, 716 (Minn.1982).

4. The state concedes that the actual damage done was less than $300 and that, even adding the subjective costs of cleanup, the total damage amounted to $170.

inferred from the fact that Bergstrom set the fire and took no steps to extinguish it.

Intent is not ordinarily susceptible of direct proof, and must be established by circumstantial evidence. *See e.g. State v. Bouwman,* 328 N.W.2d at 705 (Minn.1982). The problem recognized in *Bouwman,* of allowing experts to give opinion evidence on mental illness and specific intent in the "not guilty on the merits" phase, the first phase of trial for defendant claiming mental illness, is not present here. Bergstrom's attorney did not offer expert opinion evidence in the first phase of the trial.

This is not a *Bouwman* situation. The physical facts and the evidence surrounding Bergstrom's attempted suicide were objective, and were not disputed by either party. A lay jury is capable of examining both direct and circumstantial physical evidence. This is what lay juries do in all cases where they are asked to decide degrees of culpability where one of the essential elements of the crime is a specific intent.

■ The physical evidence conclusively showed Bergstrom was attempting suicide. The trial court, while it correctly followed *Bouwman* and *Hoffman,* could properly have instructed the jury that it could, in its discretion, consider whether Bergstrom was attempting suicide in determining whether or not she intended to destroy or damage property with a value in excess of $300. No expert opinion need be involved on this issue.

The evidence of the fire and of Bergstrom's attempted suicide came in directly from all witnesses in the trial, including the state's. It would be illogical to assume the jury would not consider the setting in which the charged crime occurred in coming to its conclusion whether a crime occurred at all. Had Bergstrom piled on her bed every available piece of furniture, clothing, and other personal property she could obtain, and had the value of that property exceeded $300, it would be proper for the jury to consider those facts in coming to a conclusion Bergstrom intended to damage property with a value in excess of $300. Although not determinative, her pil-

ing valuable property, assuming there was some available, right next to her as she set the bed on fire, would support a jury verdict that she intended to commit felony arson. On the other hand, any of the objective physical facts, that tended to negate an intention to destroy property worth $300 or more, would also be properly within a lay jury's purview to consider. A jury should not be invited to ignore the plain and unambiguous physical facts surrounding the setting of a crime scene.

■ The trial court did not expand on its previous jury instruction, but merely reread the plain elements of the offense charged in response to the jury's question to the court as to how much influence Bergstrom's mental condition might have on her guilt or innocence. The defense argues that the court's rereading of the essential elements invited the jury to disregard the suicidal nature of her act and the facts surrounding that attempted suicide, and that thus the court erred. Although we find that the court did not err on this issue, and our reversal is not based on this issue, we conclude the holding in *Bouwman* did not prevent the trial court from expanding on its instructions to allow the jury, on the question of guilt or innocence, to consider whether Bergstrom was attempting suicide in deciding her intent regarding the destruction of property.

## II.

*Sufficiency of the evidence on defense of not guilty by reason of mental illness*

■ Although Dr. Kasper, the only expert witness, testified Bergstrom was mentally ill, the jury was not required to find her mentally ill. *See State v. LaTourelle,* 343 N.W.2d 277, 282 (Minn.1984) (court will not disturb jury's finding on insanity defense even where sole expert testimony is unrebutted if there is sufficient other evidence to contradict the expert's opinion). Nor did the fact she attempted suicide mandate a finding Bergstrom was mentally ill.

■ A criminal defendant must have a mental illness which causes him not to know the nature of his act or that it is

wrong, under the M'Naghten rule. Minn. Stat. § 611.026 (1986); *State v. Linder*, 304 N.W.2d 902, 907 (Minn.1981). The jury could have rejected Bergstrom's mental illness defense despite the fact she was in treatment for a mental condition at the time of the offense. Several witnesses testified Bergstrom was oriented and in touch with reality in the hours before the suicide attempt. We defer to the jury's determination on this defense and do not disturb it. *See State v. LaTourelle*, 343 N.W.2d at 282.

### III.

*Sufficiency of the evidence on third degree arson*

When reviewing the sufficiency of the evidence, this court must determine whether the jury, acting with due regard for the presumption of innocence and the necessity of overcoming it by proof beyond a reasonable doubt, could have reasonably concluded the defendant was guilty. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

There was no contradiction in the evidence bearing on the origin of the fire or that the value of what was actually destroyed had a value of less than $300. The jury could easily have found Bergstrom intended to burn the sheets and bedspread, since she put a match to them. That, however, does not answer the question, since those items came nowhere near the threshold value of $300. In order to return the guilty verdict it did, the jury had to find that Bergstrom possessed the specific intent to destroy other property with a value of $300 or more.

■ After examining the record and giving due deference, as we must, to the finders of fact, and viewing the evidence in the light most favorable to the verdict, we conclude that the jury could not reasonably have found Bergstrom had a specific intent to damage or destroy property other than the bed and bed sheets, on which she was sitting at the time, and the clothing she was wearing. Those few items, by agreement of the parties, did not meet the $300 threshold.

We do not believe it is reasonable to conclude Bergstrom had in mind the destruction of property beyond that necessary to set herself on fire. Bergstrom knew she was under constant observation. It would be pure speculation to assume she reasonably anticipated that the fire she set to her bed could have gotten out of control and spread through her seclusion room and into adjoining rooms. What evidence that was presented on that issue went the other way. The staff member observing her testified there was no "real probability" the fire could have spread beyond the bed given the frequency of his observations of the room. The record is devoid of evidence that Bergstrom intended widespread damage and, to the contrary, is conclusive that she engaged in a genuine suicidal attempt to harm only herself by setting fire to the bed sheets she was sitting on. Her suicide attempt earlier that day in a locked bathroom, using a belt in an attempt to hang herself, although not determinative of intent, did not in any way exhibit a propensity to harm others than herself.

■ Because of the lack of evidence of intent to destroy property greater than $300 value, we reverse the felony conviction. The state, however, has proved that Bergstrom committed misdemeanor arson. *See* Minn.Stat. § 609.563, subd. 2 (1986). We reduce the conviction to misdemeanor arson and remand for resentencing. *See* Minn.R.Crim.P. 28.02, subd. 12.

On the unique and tragic facts of this case, we have doubts which we here express, about involving the criminal justice system in punishing defendant's documented suicidal behavior by a felony prosecution. We acknowledge that prosecutors are given reasonable discretion in initiating prosecutions. *See Olsen v. State*, 287 Minn. 536, 537, 177 N.W.2d 424, 426 (1970) (prosecution of husband but not wife for parental kidnapping, based on husband's charge of interference with his right to visitation after wife moved, with the children, from the state improperly).

However, genuine and unfeigned suicide attempts are often the product of tragic personality and mental disorders. Suicide

is not considered a crime in most jurisdictions, because the criminal law provides no deterrence against self destruction. The comments to the Model Penal Code state:

There is scant reason to believe that the threat of punishment will have deterrent impact upon one who sets out to take his own life. By definition, the person who commits what could be denominated a criminal attempt to commit suicide intends to succeed. It seems preposterous to argue that the visitation of criminal sanctions upon one who fails in the effort is likely to inhibit persons from undertaking a serious attempt to take their own lives. Moreover, it is clear that the intrusion of the criminal law into such tragedies is an abuse. There is a certain moral extravagance in imposing criminal punishment on a person who has sought his own self-destruction, *who has not attempted direct injury to anyone else*, and who more properly requires medical or psychiatric attention.

Model Penal Code, Comments and Commentaries § 210.5 (1980) (emphasis added).

Bergstrom did not attempt direct injury to others. The risks she posed to others by setting fire to herself in the locked seclusion ward of a hospital, under constant surveillance, are better alleviated by further commitment and appropriate methods of treatment, including separation and surveillance, such as the hospital had already employed. Even as a last resort, we question the deterrent value of a felony prosecution against this suicidal and genuinely ill person.

Bergstrom was a "vulnerable adult" under the Vulnerable Adult Act, Minn.Stat. § 626.557 (1986), which places responsibility for the care and supervision of mental patients, and the reporting of any abuse of them, on the hospital and its staff. This court has held that the Act imposes absolute civil liability, precluding any defense of contributory negligence on the part of the vulnerable adult. *Thelen by Thelen v. St. Cloud Hospital*, 379 N.W.2d 189, 194 (Minn.Ct.App.1985) (patient admitted for severe depression could not be contributorily negligent for sexual abuse committed against her by a member of the hospital staff). The statute is intended to protect vulnerable adults from their inability to protect themselves. *Id.* at 194.

This is not the case of a person at large in society whose suicidal behavior poses a direct threat to others. *See State v. Schaub*, 231 Minn. 512, 44 N.W.2d 61 (1950) (tenant was prosecuted for second degree manslaughter in the death of his landlady occurring as a result of his attempt to commit suicide). It seems contrary to the spirit of the Vulnerable Adult Act to prosecute a person vulnerable due to suicidal tendencies, and placed in seclusion to prevent suicide, for acts committed in the course of the suicide attempt which are directed only against herself.

## DECISION

The trial court did not err by failing to instruct the jury that mental illness could be considered in the guilt or innocence phase of the trial. The trial court could properly have instructed the jury that it could consider the physical evidence surrounding the attempted suicide in determining whether or not appellant had the intent to harm only the bed she was seated on, or whether she had the intent to destroy other property, but its decision not to so instruct was not error.

The jury's verdict rejecting the mental illness defense was sufficiently supported by the evidence.

The jury's verdict of third-degree felony arson was not supported by the evidence. The conviction is reduced to misdemeanor arson.

Reversed and remanded for sentencing in conformity with this opinion.